2001-NMCA-074

32 P.3d 803

**Orson L. TRELOAR, M.D., Plaintiff–Appellee,**

v.

**COUNTY OF CHAVES, Defendant–Appellant.**

No. 20,886.

Court of Appeals of New Mexico.

Aug. 9, 2001.

Certiorari Denied, No. 27,112, Sept. 19, 2001.

Charles C. Currier, Roswell, NM, for Appellee.

Elizabeth L. German, Brian A. Thomas, Brown & German, Albuquerque, NM, for Appellant.

*OPINION*

WECHSLER, Judge.

{1} Defendant, County of Chaves (County), appeals a judgment awarding Plaintiff, Dr. Orson L. Treloar, damages for breach of contract. Specifically, the County appeals the trial court's decision on three summary judgment motions. The trial court denied the County's two motions and granted Plaintiff's motion for partial summary judgment. Raising a number of sub-issues, the County contends that sovereign immunity bars Plaintiff's action against it upon an employment contract. We affirm the trial court.

*Facts*

{2} The Eastern New Mexico Medical Center (ENMMC) was established by the County pursuant to the Hospital Funding Act, NMSA 1978, §§ 4–48B–1 to –29 (1947, as amended through 1998)[1], which allows counties to maintain or operate a hospital. The County Commission created a Board of Trustees (Board) to run the hospital and delegated to the Board the authority to do so. Although the Board operated independently of the County government, it was required to make annual reports to the County. At times the Board has included the County Manager as well as a County Commissioner. The County sold bonds for the hospital in 1992, but ENMMC otherwise operated with its own funding.

{3} Beginning in 1990, Dr. Treloar entered into a series of employment contracts with ENMMC. The contracts were executed by Dr. Treloar and the current CEO of the ENMMC Board of Trustees. The two contracts that are the subject of this lawsuit were executed in 1995 and 1996. The 1995 contract contains a provision for certain benefits to Dr. Treloar in the event of the involuntary termination of his employment. The contract provides for severance pay at one and one-half times his base salary for a period of twelve months if his employment is terminated prior to the end of its term. If the decision to terminate were made by a successor to ENMMC, the payments would continue for twenty-four months. In 1996, the employment contract was amended. The amendment provided that if the operation and management of the hospital were transferred by the County, Dr. Treloar would be given an opportunity to seek employment with the successor and such efforts on the part of Dr. Treloar would not constitute a breach of the employment contract.

{4} On February 17, 1998, the County entered into a contract with Community Health Systems (CHS) to sell ENMMC for approximately $92,000,000. The Asset Purchase Agreement (APA) provided for the purchase by CHS of all the assets and business of ENMMC. The APA contains a detailed provision regarding the handling of hospital employees, one part of which specifically addresses contract employees. It states:

> With respect to the employees (the "Contract Employees") which have employment contracts with Seller as listed on Schedule "13.11(b)", Buyer agrees to begin as soon as practicable after execution of this Agreement to use its good faith efforts to (i) employ, effective as of the Closing Date, each Contract Employee on terms acceptable to Buyer and such Contract Employee, (ii) have each Contract Employee release and discharge Seller from any severance obligations Seller has under the employment agreements with the Contract Employee and (iii) keep Seller informed of the progress being made in such negotiations. Buyer shall not, without the consent of Seller, employ any Contract Employee who does not agree to release and discharge Seller from its severance

1. Although several of the statutes cited herein have been amended since this case was originally filed, we cite the statutes as they existed at the time of the filing of the complaint.

obligations under his or her employment agreement. The obligations of Buyer hereunder shall not be construed to require Buyer to enter into new employment agreements with any Contract Employee (provided this shall not relieve Buyer of its obligations hereunder to offer to employ such Contract Employee) or require Buyer to assume Seller's obligations under the employment agreements with any Contract Employee (which shall remain the responsibility of Seller unless released and discharged by the Contract Employee).

Thus, although contract employees were encouraged to enter into new contracts with CHS, they were not required to do so. However, if they did, they were required to release and discharge the Seller, or County, from its severance obligations under the employment agreements currently in place. The APA also included termination or layoff benefits of contract employees as "Obligations Not Assumed" by CHS.

{5} The evidence established that both the County Manager and the Chairman of the Chaves County Commission understood that the APA section regarding contract employees referred to Dr. Treloar's contract and the termination pay provisions of that contract. They further understood that under the APA, the obligation in regard to the severance or termination pay was that of the County. During negotiations leading up to the execution of the APA, the Chaves County Commission evaluated its potential exposure for severance or termination pay of contract employees in the event that they were not hired by CHS. At closing, the County set aside several million dollars to pay for contingencies arising subsequent to the sale.

{6} Although there were negotiations between Dr. Treloar and CHS regarding his employment, Dr. Treloar never entered into an agreement with CHS, which triggered the involuntary termination clause of his contract with ENMMC. Because ENMMC no longer existed and the County had assumed, under the APA, the obligation to pay termination or severance pay of contract employees, Dr. Treloar filed suit against the County for recovery of those benefits.

*Procedural History*

{7} The County filed a motion for summary judgment arguing that ENMMC was established under the Hospital Funding Act and that the County had delegated the powers to run the hospital to the Board of the hospital. It argued that ENMMC employees were not employees of the County and that the County was improperly named the defendant in the lawsuit. The trial court determined that there were material issues of fact regarding whether the County was liable under the contract and denied summary judgment.

{8} Thereafter, the County filed a second motion for summary judgment arguing that the suit was barred by NMSA 1978, § 37-1-23(A) (1976), because Dr. Treloar had not shown that he had a valid, written contract with the County. The County argued that any contract Dr. Treloar held was invalid because it was not adopted in compliance with the Open Meetings Act, NMSA 1978, §§ 10-15-1 to -4 (1974, as amended through 1997), or the Procurement Code, NMSA 1978, §§ 13-1-21 to -199 (1979, as amended through 1997). Finally, the County argued that Dr. Treloar had failed to mitigate damages and that the County did not have successor liability. Dr. Treloar responded that the final two reasons for summary judgment were affirmative defenses that had not been pleaded. The County then sought to amend its answer to include these affirmative defenses. The trial court allowed the amendment, and the County filed its amended answer. The trial court again denied the County's motion for summary judgment on the basis that there were material issues of fact needing resolution.

{9} Dr. Treloar then filed a motion for partial summary judgment. He sought dismissal of several of the County's affirmative defenses raised in the amended answer. The trial court granted the motion for partial summary judgment with regard to all but one affirmative defense, deferring its ruling until after trial. The parties then entered into a stipulated judgment for damages of $425,000.

{10} The County's appeal attacks the rulings of the trial court on the three summary judgment motions. We affirm.

### Standard of Review

{11} "Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ciup v. Chevron U.S.A., Inc.*, 1996–NMSC–062, ¶ 7, 122 N.M. 537, 928 P.2d 263. "On review, 'we examine the whole record for any evidence that places a genuine issue of material fact in dispute.'" *Handmaker v. Henney*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879 (quoting *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 15, 123 N.M. 752, 945 P.2d 970). "[W]e view the facts in a light most favorable to the party opposing [summary judgment] and draw all reasonable inferences in support of a trial on the merits." *Handmaker*, 1999–NMSA–043, ¶ 18. If the facts are undisputed, we review de novo the trial court's application of the law to those facts. *See Sonic Industries, Inc. v. State*, 2000–NMCA–087, ¶ 5, 129 N.M. 657, 11 P.3d 1219.

{12} We base our standard of review in this appeal upon the manner in which the County argues the issues. The County's first two sub-issues concerning the Hospital Funding Act and Section 37–1–23 assert only that the trial court erred in failing to grant its summary judgment motions. Thus, we must determine whether Dr. Treloar presented issues of material fact that would preclude summary judgment. *See Lopez v. Kline*, 1998–NMCA–016, ¶ 8, 124 N.M. 539, 953 P.2d 304. As to the trial court's grant of partial summary judgment in favor of Dr. Treloar on the County's affirmative defenses, the County does not appear to argue that there were material facts in dispute. We determine those issues based on whether the trial court properly applied the law to the undisputed facts.

### The Hospital Funding Act

{13} The County argues that the ENMMC Board of Trustees cannot bind the County because the Hospital Funding Act bars such a consequence. The County raised this argument in its first summary judgment motion. In that motion, the County alleged several facts, including that the County did not have operative authority over the hospital; that the ENMMC was not a County facility; and that ENMMC employees were not County employees. Dr. Treloar responded to the motion with additional facts including testimony from the County Manager that the County was obligated to Dr. Treloar on his employment contract; that the contract was with the County; and that the APA explicitly recognized the County's obligation concerning the termination benefits of the contract employees of the hospital. As a result, while the parties did not dispute that Dr. Treloar did not work directly for the County, the facts presented were sufficient to create an issue regarding whether the County was bound by the ENMMC contract. Thus, the trial court properly denied summary judgment on the issue of whether the Hospital Funding Act barred this lawsuit.

{14} In its brief in chief, the County appears to argue that the Hospital Funding Act prohibits ENMMC from taking any action that could impact the budget of the County. The County did not raise this argument below and cannot now argue this position as a reason for reversing the trial court's ruling denying summary judgment. *See Carrillo v. Compusys, Inc.*, 1997–NMCA–003, ¶ 11, 122 N.M. 720, 930 P.2d 1172. Although the County argued to the trial court that the ENMMC Board of Trustees worked independently of the County, it never argued that the Hospital Funding Act itself prohibited the Board from making business decisions that might affect the County's financial matters. We recognize that the statute provides a framework for establishing and financing such hospitals and that, pursuant to the statute, only the County may issue bonds or levy taxes for the hospitals. *See* § 4–48B–5(K). However, that statutory limitation neither raises nor answers the question posed by the County's summary judgment motion, which was whether the County could be bound by the actions of the ENMMC Board of Trustees. The County never raised the question of a statutory prohibition.

*Section 37–1–23(A)*

■ {15} Section 37–1–23(A) requires that any claim against a governmental entity based on contract must be based on a valid, written contract. The County moved for summary judgment on its allegation that Dr. Treloar did not have a written contract with the County. In response to that motion, Dr. Treloar presented evidence showing that the County had specifically, validly, and in writing agreed to honor his employment contract with ENMMC. In addition, the summary judgment record included testimony that the County knew of the existence of the hospital's obligation to Dr. Treloar at the time that it was negotiating the sale of the hospital. The evidence showed a written contract, the APA, in which the County accepted that obligation. Therefore, although there was no contract to which both Dr. Treloar and the County were parties, the summary judgment record included evidence of a written contract in which the County assumed the obligation on the contract between Dr. Treloar and the hospital.

{16} The County nevertheless contends that this evidence is insufficient without a written contract with the County. We believe that the County reads Section 37–1–23(A) too narrowly. We do not believe that Section 37–1–23(A) requires the party making the claim to be a party to a contract with the governmental entity. Rather, Section 37–1–23(A) only requires a written contract underlying the claim. *Cf. Garcia v. Middle Rio Grande Conservancy Dist.*, 1996–NMSC–029, ¶¶ 11–15, 121 N.M. 728, 918 P.2d 7 (concluding that a written employment contract can be implied from a personnel manual).

■ {17} The record is replete with evidence that the County was aware of Dr. Treloar's employment contract and that it assumed the obligations under that contract in the sales agreement. Although the County argues that there was no formal ratification of Dr. Treloar's employment contract by the County, we believe there is at least a sufficient factual showing for the purposes of overcoming summary judgment that the County's assumption of the obligations of the contract in the APA acted as a ratification.

*See Southwest Distrib. Co. v. Olympia Brewing Co.*, 90 N.M. 502, 505, 565 P.2d 1019, 1022 (1977) (stating that "a corporation which purchases the assets of another corporation does not automatically acquire the liabilities or obligations of the transferor corporation except ... where there is an agreement to assume those obligations").

{18} The County argues that the only way Dr. Treloar can claim a contract with it is by way of a third-party beneficiary claim. It then argues that Dr. Treloar was not a third-party beneficiary of the APA. This is not the argument the County made to the trial court. In the motions for summary judgment and the affirmative defenses raised, the County argued that there could be no successor liability. The trial court never ruled as to whether Dr. Treloar was a third-party beneficiary to the APA. Therefore, we do not examine Dr. Treloar's status as a third-party beneficiary.

■ {19} The claim argued, that there could be no successor liability on the part of the County, does not apply to this case. The County was not a successor to the hospital. It had simply contracted to be responsible for the severance benefits portion of the contract employees' contracts with the hospital. Dr. Treloar was therefore able to enforce the County's contractual obligations. *Lawrence Coal Co. v. Shanklin*, 25 N.M. 404, 408, 183 P. 435, 437 (1919) (internal quotation marks and citation omitted) ("It is well-settled doctrine that, where one for a sufficient consideration agrees to assume and pay the debt of another, the creditor is impliedly included as within the privity of the promise, and he may single out the promisor and sue him by direct action.").

{20} The County relies in large part upon *Trujillo v. Gonzales*, 106 N.M. 620, 747 P.2d 915 (1987). *Trujillo* does not apply because it involved an oral promise of employment. The claim was barred because it was based on oral representations that conflicted with a written contract. In the case on appeal, the representations were made in a valid, written contract, rather than orally. Dr. Treloar did not need to present evidence of formal ratification of his employment contract to defeat

summary judgment. Rather, he was only required, as he did, to present facts that would create issues regarding whether there was a valid, written contract upon which he could make a claim.

■ {21} Insofar as the County argues that the trial court improperly granted Plaintiff's summary judgment on the defense of no written contract, the facts are undisputed that Dr. Treloar had a written employment contract with the ENMMC. It is also undisputed that the County, in the written sales agreement with CHS, assumed the obligations of the ENMMC with regard to its contract employees. Based on these undisputed facts, it is clear that the claim for the severance pay is based upon a written contract. Therefore, the trial court properly determined that the County's defense of lack of a written contract was meritless. The defense was properly dismissed upon these undisputed facts.

*The Bateman Act*

■ {22} The County argued as one of its affirmative defenses that the Bateman Act barred Dr. Treloar's claim. Thus, the County had the burden of pleading and proving a violation of the Bateman Act. *Landers v. Bd. of Educ.*, 45 N.M. 446, 452, 116 P.2d 690, 693 (1941). Dr. Treloar moved for summary judgment on the basis that the Bateman Act did not apply to the facts of this case. As the County does not dispute the facts, we must determine the legal question of whether the Bateman Act applies to this case.

■ {23} The purpose of the Bateman Act is to prevent counties and municipalities from contracting debts that they are not able to pay. *See City of Hobbs v. State ex rel. Reynolds*, 82 N.M. 102, 104, 476 P.2d 500, 502 (1970). The Bateman Act provides:

It is unlawful for any board of county commissioners, ... for any purpose whatever to become indebted or contract any debts of any kind or nature whatsoever during any current year which, at the end of such current year, is not and cannot then be paid out of the money actually collected and belonging to that current year, and any indebtedness for any current year which is not paid and cannot be paid, as above provided for, is void.

NMSA 1978, § 6–6–11 (1968). The prohibition of this section relates not only to incurring debt, but also to the contracting of debts which are not or cannot be paid out of money actually collected and belonging to the current year. *See City of Hobbs*, 82 N.M. at 104, 476 P.2d at 502; N.M. Att'y Gen. Op 65–53 (1965).

{24} The debt owed to Dr. Treloar by virtue of the termination of his employment contract is one that could have been paid "out of the money actually collected and belonging to that current year." Section 6–6–11. The County set aside several million dollars for contingencies from the money received from the sale of the hospital. The debt to Dr. Treloar became effective at the time of the sale, when he did not enter into a new contract with CHS. Thus, the debt was incurred in the same year of the sale and could have been paid out of monies received by the County from the sale.

■ {25} Further, when a special fund for a purpose is created, the Bateman Act is not applicable. *City of Hobbs*, 82 N.M. at 104, 476 P.2d at 502. We believe that the County's setting aside of several million dollars for contingencies arising after the sale was the creation of such a special fund. The purpose of the set aside was to ensure the availability of funds to pay debts that might arise with regard to the hospital even if they did not come into existence in the year of the sale.

{26} The County appears to be arguing that the Bateman Act applies to the ENMMC and that the hospital did not have the authority to enter into a contract with Dr. Treloar that was either for more than one year or that created future indebtedness contingent upon future conduct. This argument appears to be inconsistent with the County's contention that the ENMMC was not an arm of the County. Even assuming that the Bateman Act applies to the hospital, *see* § 4–48B–5(J), under the facts of this case, the Act does not void the agreement of the hospital to pay severance benefits if Dr. Treloar's employment is involuntarily terminated. There is no indication in the record

**802**

that if the ENMMC had continued as a county hospital, it would not have been able to make the severance payments to Dr. Treloar in the year of his termination out of the funds of that year. There was no suggestion that the contract would ever create any current indebtedness in violation of the Act. *See City of Hobbs,* 82 N.M. at 104, 476 P.2d at 502.

*Open Meetings Act*

■ {27} The County also argues that the contract between ENMMC and Dr. Treloar should not be enforced against it because the contract was not approved pursuant to the Open Meetings Act. However, the contract that Dr. Treloar sought to enforce was the APA, in which the County agreed to assume the termination or severance pay obligations of Dr. Treloar's employment. The County admits that the APA is valid. Consequently, we assume that the County's adoption of the APA was in compliance with the Open Meetings Act.

■ {28} Rather, it appears that the County's argument goes to the employment contract itself. It argues that there was no evidence that Dr. Treloar's employment contract was approved at an open meeting of the hospital's Board of Trustees. The Open Meetings Act requires that "[a]ll meetings of any public body except the legislature and the courts shall be public meetings," and anyone so desiring may attend the proceedings. Section 10–15–1(A). Thus, when a meeting is conducted for the purpose of formulating public policy, discussing public business, or taking any action within the authority of a public body, the meeting must be open to the public. Section 10–15–1(B). The Open Meetings Act does not, however, apply to certain personnel matters. Section 10–15–1(H)(2).

{29} We assume for purposes of discussion that the Open Meetings Act applies to the Board of Trustees. The evidence was uncontested that the Board's bylaws gave authority to the CEO to enter into employment contracts with his subordinates. Given that authority, we assume that the contracts could be entered into without a public meeting. There was testimony that the Board re-

viewed the contracts of the contract employees in closed sessions and that Dr. Treloar's contract was discussed at a closed-door meeting conducted by the hospital's attorney. These closed-door discussions were proper under the personnel exclusion of the Open Meetings Act. It does not appear that any "final actions" were taken by the Board on the employment contracts. *Id.* Therefore, since there was no action taken, the Open Meetings Act did not apply. The contract between Dr. Treloar and the ENMMC did not have to be adopted by either the hospital's Board or the County Commission in order to be valid.

*Public Policy*

■ {30} In addition, the County argues that the contract between Dr. Treloar and ENMMC was void as against public policy. It did not make this argument to the trial court. *Rust Tractor Co. v. Consol. Constructors, Inc.,* 86 N.M. 658, 660, 526 P.2d 800, 802 (Ct.App.1974) (stating that a party cannot change his theory on appeal). As affirmative defenses, the County claimed that liquidated damages cannot be enforced and punitive damages cannot be awarded against a government entity. In his motion for partial summary judgment, Dr. Treloar pointed out that he was not seeking punitive damages and, thus, that defense was not applicable to the case.

■ {31} With regard to the claim that liquidated damages cannot be enforced against a governmental entity, we know of no authority and the County has cited us none for the proposition that liquidated damages cannot be enforced against a governmental entity. Moreover, the payment that Dr. Treloar sought was severance pay. Severance pay is not the same as liquidated damages. Rather, it is viewed as something that has been earned by the employee. *See* 30 C.J.S. *Employer–Employee* § 152, at 226–28 (1992). Thus, the trial court properly determined that this defense was inapplicable to this case.

*Anti Donation Clause*

■ {32} The County also argues that the purported contract to pay severance ben-

efits in the event of an involuntary termination is a violation of the Anti–Donation Clause of the New Mexico Constitution. N.M. Const. art. IX § 14. It argues that there must be some prospective benefit to the state from the award. *See State ex rel. Sena v. Trujillo,* 46 N.M. 361, 368–69, 129 P.2d 329, 333 (1942). However, as we noted earlier, severance pay is deemed to be in the nature of wages that have been earned. Thus, consideration had been given for the severance obligation, and there was no gift.

*Conclusion*

{33} The trial court properly determined that issues of material fact precluded the grant of summary judgment on the basis of the Hospital Funding Act and Section 37–1–23, which requires that the claim be based on a valid, written contract. The trial court also properly determined that neither the Bateman Act, the Open Meetings Act, nor the Anti Donation Clause provided a defense to the claim. We affirm the trial court's determination regarding the summary judgment motions and affirm the judgment awarding Dr. Treloar his damages upon breach of contract.

{34} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Judge, and CYNTHIA A. FRY, Judge.