2003-NMCA-121

78 P.3d 76

**Scott BAUER and Gregory Schneider, Plaintiffs–Appellants,**

**v.**

**The COLLEGE OF SANTA FE, Dr. Linda Hanson, Individually and as President of the College of Santa Fe; Steven Miller, Individually and as an employee of The College of Santa Fe; David Dunn, Individually and as an employee of The College of Santa Fe; and John Weckesser, Individually and as an employee of The College of Santa Fe, Defendants–Appellees.**

**No. 23,337.**

Court of Appeals of New Mexico.

Aug. 22, 2003.

Certiorari Denied No. 28,276, Oct. 3, 2003.

Michael D. Armstrong, Albuquerque, NM, for Appellants.

Walter J. Melendres, Tonia Ouellette Klausner, Montgomery & Andrews, PA, Santa Fe, NM, for Appellees.

## OPINION

VIGIL, Judge.

{1} Two probationary, non-tenured professors at the College of Santa Fe (CSF) sued CSF, its president, and three professors, contesting non-renewal of their employment for the 2001–2002 academic year. The district court granted Defendants summary judgment on Plaintiffs' claims of breach of contract and civil conspiracy. We affirm the district court.

## I. STANDARD OF REVIEW

{2} Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "On review, we examine the whole record for any evidence that places a genuine issue of material fact in dispute." *Treloar v. County of Chaves,* 2001–NMCA–074, ¶ 11, 130 N.M. 794, 32 P.3d 803 (internal quotation marks and citations omitted). "[W]e view the facts in a light most favorable to the party opposing [summary judgment] and draw all inferences in support of a trial on the merits." *Id.* Undisputed facts and the meaning of an unambiguous contract are reviewed de novo as questions of law. *Id.; Creson v. Amoco Prod. Co.,* 2000–NMCA–081, ¶ 10, 129 N.M. 529, 10 P.3d 853.

## II. FACTS

{3} Plaintiffs Scott Bauer (Bauer) and Gregory Schneider (Schneider) were hired by CSF for the 1999–2000 and 2000–2001 academic years as assistant professors in the Contemporary Music Program. The contracts commenced in August and continued through the following May each academic year. When Schneider signed his second contract, his first year of employment at CSF was counted towards tenure. Bauer was given two years of credit towards tenure based upon teaching experience prior to com-

mencing at CSF and his first year of employment at CSF.

{4} Defendant Linda Hanson (Hanson) became president of CSF in July 2000. As the chief administrator and executive officer, she is responsible for managing CSF and all its departments. In this capacity, she prepares and administers the annual budget of CSF, subject to approval by the Board of Trustees (the Board). She is also responsible for appointing and promoting the faculty members.

{5} In September 2000, Hanson submitted her first budget to the Board for the 2000–2001 academic year. The Board approved a budget that included a $2.2 million operating deficit. The deficit was paid from a discretionary quasi-endowment fund of CSF. Hanson immediately started working on the 2001–2002 budget, seeking to alleviate the budget problems by raising revenues and reducing expenditures. As part of the process, Hanson resolved to eliminate four faculty positions. Two were eliminated by attrition. Hanson then looked at the Contemporary Music Program which had the highest total cost per major and the fewest full time students. The program also had two non-tenured faculty members: the Plaintiffs. Hanson notified Plaintiffs on December 12, 2000, that their appointments for the 2001–2002 academic year would not be renewed.

## III.   BREACH OF CONTRACT CLAIMS

### A.   Right To Reappointment

{6} The parties agree that the employment relationship between them was governed by the signed contracts and the Faculty Handbook of CSF (the Handbook). They also agree that the applicable provisions of the Handbook are unambiguous. We therefore review these provisions de novo. *Treloar*, 2001–NMCA–074, ¶ 11, 130 N.M. 794, 32 P.3d 803; *Creson*, 2000–NMCA–081, ¶ 10, 129 N.M. 529, 10 P.3d 853.

{7} The "appointment to the faculty" provisions of the Handbook specify only two types of full-time appointments to the rank of instructor or higher: a "Probationary appointment" and "Appointments with continuous tenure." Plaintiffs received a probationary appointment since they were not tenured. The "Criteria for Appointment" section of the Handbook states, "[f]aculty members will be appointed or reappointed subject to their professional qualifications, as evidenced either by prior accomplishments at other institutions or by demonstrated performance at the College." The standard employment contract for all faculty member appointments is for the academic year, a period of nine months "whether initial or renewed." A "non-reappointment" occurs under the Handbook when there is "[a]ction taken by the Administration not to renew the standard contract of a probationary faculty member after the expiration of his/her existing contract."

{8} Bauer and Schneider argue that the "Criteria for Appointment" provisions of the Handbook quoted above *required* CSF to reappoint them because they possessed adequate "professional qualifications." We reject this contention as contrary to the unambiguous language of the Handbook and contrary to common sense.

{9} We agree with CSF that the "criteria for appointment" provision merely sets forth general criteria for appointment or reappointment which must be met. If a probationary faculty member does not possess the requisite professional qualifications, he or she is not entitled to be appointed or reappointed. However, this provision of the Handbook does not set any limitations on "non-reappointment."

{10} Bauer and Schneider had contracts of a specific duration. Their contracts stated they commenced employment in August 2000 and the employment terminated in May 2001. Hanson simply exercised a right of "non-reappointment" as described in the Handbook when she gave Bauer and Schneider notice on December 12, 2000, that their appointments would not be renewed. The contracts and Handbook together describe only an academic year employment relationship. CSF did not breach the employment contracts with Bauer and Schneider, it simply refused to renew their employment arrangement. *Graff v. Glennen*, 106 N.M. 668, 668, 748 P.2d 511, 511 (1988) (stating contracts described year-by-year employment relation-

ship that did not entitle plaintiff to employment beyond dates stipulated in the contracts); *Hill v. Talladega Coll.*, 502 So.2d 735, 738 (Ala.1987) (stating term contract by definition lapses at completion of time for performance, and teacher under such a contract has no entitlement to continued employment beyond contract's stated term).

{11} The Handbook clearly states that CSF can terminate a tenured professor or a probationary appointee before the end of the appointment because of financial exigency. Furthermore, CSF can even deny tenure for budgetary reasons. However, under the argument advanced by Bauer and Schneider, CSF may not decline to renew a probationary appointment for budgetary reasons. According to them, CSF simply cannot decide not to reappoint a probationary employee if he has "professional qualifications." This is an unreasonable interpretation which we decline to adopt. *See State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 130, 812 P.2d 777, 784 (1991) (stating interpretation of unambiguous contract must be reasonable).

{12} The Handbook does not restrict CSF's authority to refuse to reappoint a probationary, non-tenured professor. Accordingly, summary judgment was properly granted in favor of the Defendants. *See DeSimone v. Siena Coll.*, 243 A.D.2d 1037, 663 N.Y.S.2d 701, 702 (App.Div.1997) (holding that to extent faculty handbook was incorporated into employment contract, nothing contained therein, or in contract, mandated renewal or substantively limited college's discretion in deciding whether to renew probationary contract); *Taggart v. Drake Univ.*, 549 N.W.2d 796, 798 (Iowa 1996) (noting that universities possess nearly unfettered discretion when deciding to reappoint an untenured professor for another year of service).

■ {13} To the extent Bauer and Schneider rely on a different interpretation put forward by the Faculty Handbook Committee and Faculty Grievance Committee, that reliance is misplaced. The Faculty Handbook Committee's interpretation, issued two months after Bauer and Schneider were notified of their "non-reappointment," has no

bearing on their rights at the time they received the notice. The Handbook specifically states that when an interpretation by the Faculty Handbook Committee is given, it is binding only "until such time as the Board of Trustees either adopts the interpretation as final, or proposes its own interpretation for consideration and adoption according to the established procedures for changing the Handbook." It is also undisputed that the Board rejected the interpretation given by the Faculty Handbook Committee. Similarly, the only power given to the Grievance Committee was to "request reconsideration by the President." Reconsideration was requested and denied.

### B. Claim of Untimely Notice

■ {14} Bauer makes one additional argument: that notice of "non-reappointment" was not timely given in accordance with the Handbook. In doing so, he attempts to equate "years of service" at CSF with "years credited toward tenure." Again, we review the unambiguous contractual provision de novo as a question of law. *Creson*, 2000–NMCA–081, ¶ 10, 129 N.M. 529, 10 P.3d 853. In pertinent part, the Handbook provides that notice of reappointment must be given in writing:

b. Not later than December 15th of the second academic year of service, if the appointment expires at the end of that academic year.

c. At least twelve months before the expiration of an appointment after two or more years of service at The College of Santa Fe.

{15} Bauer asserts that the twelve-month notice requirement for non-renewal of his contract was required by Section c of the notice provision, because he had been credited with two years toward tenure based upon his teaching experience before he began teaching at CSF. It is undisputed that Bauer did not have "two or more years of service at The College of Santa Fe," as described in Section c. Moreover, it is undisputed that when he received the notice of non-reappointment, Bauer was in his "second academic year of service," as described in Sec-

tion b. Notice was given on December 12, 2000, in accordance with Section b. "In the absence of ambiguity, a court must interpret and enforce the clear language of the contract and cannot make a new agreement for the parties." *Nearburg v. Yates Petroleum Corp.*, 1997–NMCA–069, ¶ 23, 123 N.M. 526, 943 P.2d 560. The Appellant's argument that CSF breached his employment contract due to untimely notice of non-reappointment also fails.

## IV. CIVIL CONSPIRACY

{16} To establish civil conspiracy, a plaintiff must demonstrate the following: "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Ettenson v. Burke*, 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440 (internal quotation marks and citation omitted). Where defendants have committed no independent unlawful act, a conspiracy claim fails as a matter of law. *Ettenson* teaches, "[a] civil conspiracy must actually involve an independent, unlawful act that causes harm—something that would give rise to a civil action on its own," and that "[w]ithout an actionable civil case against one of the conspirators ... an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense." *Id.* ¶ 12. Plaintiffs contend that Hanson and two professors conspired to breach their contracts. However, summary judgment was properly granted on the breach of contract claims. Defendants were therefore also entitled to judgment as a matter of law on the conspiracy claim. *Silva v. Town of Springer*, 1996–NMCA–022, ¶ 25, 121 N.M. 428, 912 P.2d 304 (affirming summary judgment where plaintiffs failed to establish that defendants committed any illegal acts resulting in plaintiffs' termination from employment).

## V. REMAINING CLAIMS

{17} The remaining claims were abandoned, either expressly or because no argument was made on appeal that summary judgment was improperly granted as to those claims. *See State v. Pettigrew*, 116 N.M. 135, 137–38, 860 P.2d 777, 779–80 (Ct.App.1993) (stating that issues "raised at earlier stages in the appellate proceedings but not argued in the briefs, are deemed abandoned").

## VI. CONCLUSION

{18} The order granting Defendants summary judgment is affirmed.

{19} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.