2005-NMCA-067

113 P.3d 859

**Robert SEEDS and Laura Seeds, Plaintiffs–Appellants,**

v.

**Richard LUCERO, John Lenssen, Anthony Vandervossen, and Kathy Vandervossen, Defendants–Appellees.**

No. 23,704.

Court of Appeals of New Mexico.

March 30, 2005.

Certiorari Denied, No. 29,182, May 26, 2005.

Scott F. Voorhees, Scott F. Voorhees P.C., Santa Fe, NM, for Appellants.

R. Galen Reimer, Gallagher Casados & Mann, P.C., Albuquerque, NM, for Appellees (City Defendants).

Frank T. Herdman, Brenden J. Murphy, Rubin Katz Law Firm, P.C., Santa Fe, NM, for Appellees (VanderVossens).

## OPINION

FRY, Judge.

{1} This case arises from a political and familial feud that has already resulted in two opinions from our Court. *See VanderVossen v. City of Espanola*, 2001–NMCA–016, 130 N.M. 287, 24 P.3d 319; *Seeds v. VanderVossen*, No. 22,718, (N.M.Ct.App. Aug. 11, 2003) (mem.). In this case, Plaintiffs Robert and Laura Seeds sued Robert's sister, Kathy VanderVossen, and Kathy's husband, Anthony VanderVossen, for alleged interference with Plaintiffs and their towing businesses in Espanola. Plaintiffs also sued Espanola's mayor, Richard Lucero (who is Anthony VanderVossen's uncle) and the city attorney, John Lenssen (together, City Defendants), contending that they used their official positions to assist the VanderVossens in their attempt to cause personal and financial harm to Plaintiffs. The issues in this appeal concern: (1) whether the City Defendants were acting within the scope of their duties and therefore were immune under the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (1976, as amended through 2004) (TCA), from a claim of conspiracy to commit certain tortious conduct; and (2) if so, whether the VanderVossens can be liable for civil conspiracy when the City Defendants, with whom they are alleged to have conspired, are immune. The trial court ruled that the City Defendants were immune under the TCA and also dismissed the civil conspiracy claim against the VanderVossens. We affirm the trial court's ruling that the City Defendants are immune, but we reinstate the civil conspiracy claim against the VanderVossens.

## BACKGROUND

{2} We set out facts as alleged in Plaintiffs' first amended complaint, considering them undisputed for purposes of our disposition of the issues in this case. Plaintiffs and the VanderVossens are neighbors and business competitors. Each Plaintiff and each VanderVossen owns a towing business in Espanola. All licensed towing companies in Espanola are listed with local law enforcement agencies on 911 rotation logs. When a vehicle requires towing, the towing companies are called on a rotating basis. As we explain below, the rotation logs became a bone of contention between the parties.

{3} Plaintiff Robert Seeds and Defendant Lucero are political rivals. Mr. Seeds was an elected member of the Espanola City Council until the term ending in 1998. At that time he was defeated by a member of a slate of candidates that included Lucero as candidate for mayor. Lucero was elected mayor at that time, whereupon Mr. VanderVossen began to spend considerable time at the city offices, "where he used his position as nephew of the mayor to pressure city employees to take various actions" against Plaintiffs.

{4} Plaintiffs alleged that Lucero "directed city employees to take actions against [Plaintiffs] which were requested by Anthony VanderVossen, and which were designed to harass [Plaintiffs] and damage their businesses." Among the actions allegedly taken were: threatening to remove one of Plaintiffs' towing businesses from the 911 rotation logs and requesting law enforcement agencies to do so; filing baseless criminal complaints against Plaintiffs, at the behest of Mr. VanderVossen, for purported violations of municipal zoning ordinances, while at the same time refusing to prosecute the VanderVossens and others for their violations of the zoning ordinances; and providing assistance

to the VanderVossens in their attempt to obtain utility easement rights across Plaintiffs' property. In addition, Plaintiffs alleged that the VanderVossens asked the city council to set aside a special zoning exception Mr. Seeds had obtained from the planning and zoning commission. When the council denied the VanderVossens' petition, Defendant Lenssen appealed the council's decision to the trial court without the council's permission in order to help the VanderVossens, who were his former clients.

{5} Relying on the above allegations, Plaintiffs asserted claims against the VanderVossens and the City Defendants for conspiracy, violation of 42 U.S.C. § 1983 (1996), malicious abuse of process, wrongful interference with business relations, prima facie tort, intentional infliction of emotional distress, and punitive damages. Defendants removed the case to federal court. Plaintiffs ultimately stipulated to the dismissal of their claim for wrongful interference with business relations and various aspects of the other claims. The federal trial court then granted Defendants summary judgment on the § 1983 claims and remanded the state claims to the state court.

{6} The City Defendants moved under Rule 1–012(B)(6) NMRA for dismissal of all claims against them on the ground that there was no applicable waiver of immunity under the TCA. The City Defendants also sought summary judgment on the ground that they were entitled to judgment on the various tort claims as a matter of law. The VanderVossens also sought summary judgment. The trial court dismissed all claims against the City Defendants on the basis of sovereign immunity. It also granted summary judgment to the VanderVossens on Plaintiffs' claims for intentional infliction of emotional distress and Ms. Seeds' claim for malicious abuse of process. In addition, the court granted the VanderVossens summary judgment on Plaintiffs' conspiracy claims "because the City of Espanola and the employees identified by Plaintiffs as the basis for this claim are immune from liability under the New Mexico Tort Claims Act." Plaintiffs appeal only from the order dismissing all claims against the City Defendants and the

order granting the VanderVossens summary judgment on the conspiracy claims; they do not appeal from the summary judgment in favor of the VanderVossens on their other claims.

## DISCUSSION

### Whether the City Defendants Were Acting Within the Scope of Their Duties

{7} The parties treat the trial court's judgment as a Rule 1–012(B)(6) dismissal. It is clear that the trial court dismissed Plaintiffs' conspiracy claim in response to the City Defendants' Rule 1–012(B)(6) attack based on sovereign immunity. However, we note that the City Defendants attached many documentary exhibits to their motion for summary judgment, and the trial court noted in its final judgment that it had considered both motions. Therefore, we consider the court's ruling to be summary judgment in favor of the City Defendants. *See Santistevan v. Centinel Bank of Taos,* 96 N.M. 730, 731, 634 P.2d 1282, 1283 (1981) (explaining that a motion to dismiss will be treated as a motion for summary judgment when matters outside the pleadings are presented to the trial court).

{8} Summary judgment is warranted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). If the facts are not in dispute, and only their legal effect remains to be determined, summary judgment is proper. *Gardner–Zemke Co. v. State,* 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). Our review of the trial court's determination is de novo. *Bartlett v. Mirabal,* 2000–NMCA–036, ¶ 4, 128 N.M. 830, 999 P.2d 1062.

{9} Plaintiffs concede that the City Defendants are immune for any actions they performed while in the scope of their duties. *See* NMSA 1978, § 41–4–4 (2001) (providing that "any public employee while acting within the scope of duty [is] granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act [28–22–1 to 28–22–5 NMSA 1978] and by Sections 41–4–5 through 41–4–12 NMSA 1978"). But Plaintiffs contend the City Defendants were not acting within the scope of

their duties when they conspired with the VanderVossens to harm Plaintiffs. Thus, they argue that the conspiracy itself places the City Defendants outside the protection of the TCA and subjects them to personal liability.

{10} " '[S]cope of duty' means performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance[.]" NMSA 1978, § 41–4–3(G) (2003). Our case law establishes that a public employee may be within the scope of authorized *duty* even if the employee's *acts* are fraudulent, intentionally malicious, or even criminal. *See Risk Mgmt. Div. v. McBrayer*, 2000–NMCA–104, ¶¶ 12, 17, 129 N.M. 778, 14 P.3d 43 (explaining that TCA may require a governmental entity to defend and indemnify its employee even if the employee "acts fraudulently or with actual intentional malice to injure another," and that "the legislature likely foresaw the possibility that a public employee could abuse the *duties* actually requested, required or authorized by his state employer and thereby commit malicious, even criminal *acts* that were unauthorized, yet incidental to the performance of those duties"). Consequently, Plaintiffs misunderstand the scope of duty concept when they argue that the critical question is "whether [the City Defendants] were motivated solely by personal concerns or whether they were working with a view toward furthering the City's interests[.]" As our Supreme Court stated in *Celaya v. Hall*, 2004–NMSC–005, ¶ 25, 135 N.M. 115, 85 P.3d 239, "the TCA clearly contemplates including [those] who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." The City Defendants' wrongful motive is simply irrelevant, as long as there is "a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform." *Id.* ¶ 26 (internal quotation marks and citation omitted).

{11} In this case, the City Defendants were generally performing their authorized duties at the time of the actions forming the basis of Plaintiffs' claims. In broad terms, Plaintiffs alleged that the City Defendants selectively enforced city ordinances and filed groundless criminal charges against Plaintiffs.[1] Yet even if we attribute malicious motives to these actions by the City Defendants, there was an obvious connection between the City Defendants' authorized duties to enforce the city's ordinances and the allegedly malicious conduct. Plaintiffs seem to concede as much in their briefs, stating that they "assume that Richard Lucero and John Lenssen will be immune from liability for acts they performed which were within the scope of their duties." Plaintiffs point to only two categories of acts that they claim were outside the scope of the City Defendants' duties: (1) the act of conspiring with the VanderVossens to injure Plaintiffs, and (2) the acts of the VanderVossens that are imputed to the City Defendants in accordance with the law of civil conspiracy.

{12} A civil conspiracy is a "combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Las Luminarias of the N.M. Council of the Blind v. Isengard*, 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct.App.1978). "The purpose of a civil conspiracy claim is to impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." *Ettenson v. Burke*, 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440.

{13} With respect to Plaintiffs' claim that the City Defendants' act of conspiring with the VanderVossens was outside the scope of their duties, we do not agree. The purpose of the conspiracy, as alleged by Plaintiffs and developed through the evidence they presented, was to cause Plaintiffs financial harm by utilizing the machinery of city government. Therefore, by allegedly agreeing to this scheme, the City Defendants were doing nothing more than agreeing to use their authorized duties for malicious rea-

---

1. Plaintiffs also claimed that Defendant Lenssen frivolously appealed the city council's decision refusing to set aside Robert Seeds's special ex-

ception, but they later admitted that Lenssen did not appeal that decision and that their allegation to this effect was inaccurate.

sons. We see no basis, and Plaintiffs provide none, to separate the alleged agreement from the acts that carry out the agreement. Thus, a wrongful purpose formed in an agreement is no less protected than is the same purpose in carrying out acts that are within the scope of duty. *See Celaya,* 2004–NMSC–005, ¶ 25, 135 N.M. 115, 85 P.3d 239 (noting that "the TCA clearly contemplates including [those] who abuse their officially authorized duties, even to the extent of some tortious and criminal activity"). Here, the only reasonable conclusion to be drawn is that the City Defendants' alleged act of conspiring to selectively enforce the municipal zoning laws was within the scope of their authorized government duties. *See Medina v. Fuller,* 1999–NMCA–011, ¶ 22, 126 N.M. 460, 971 P.2d 851 (explaining that although the question of whether a public employee was acting within the scope of duty is usually a question of fact, if only one reasonable conclusion can be drawn from the facts presented, summary judgment is appropriate).

{14} As for Plaintiffs' second claim, that the VanderVossens' acts, imputed to the City Defendants, were outside the scope of the City Defendants' duties, we are not persuaded. The only act of the VanderVossens specified by Plaintiffs is Mr. VanderVossen's purported perjury before the city council, where he testified that he did not have notice of the hearing where Mr. Seeds's special exception was approved. As we explain below, even if we assume Mr. VanderVossen in fact lied to the council and that this act is imputed to the City Defendants, we conclude as a matter of law that the act was in the scope of the City Defendants' duties.

{15} We look to the act of conspiring to determine whether imputed acts are within the scope of a public employee's duties. The purpose of the alleged conspiracy was to utilize the functions the City Defendants were authorized to perform, such as the enforcement of zoning ordinances, to harm Plaintiffs. If the VanderVossens' actions are imputed to the City Defendants, it is as if the City Defendants themselves performed those actions. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 427 (2d ed.1995) (defining "impute" as "to regard . . . as being

done, caused, or possessed by"). Because the City Defendants' only role in the conspiracy was to perform authorized acts in order to achieve their goal, any actions they undertook, even imputed actions, would necessarily be within the scope of their duties. Thus, as long as the act of conspiring is within the scope of a public employee's duties, any co-conspirator's acts that are imputed to the public employee (such as Mr. VanderVossen's lying to the city council) will be, by definition, within the scope of the employee's duties.

{16} We hold that, as *Celaya* and *McBrayer* have construed scope of duty under the TCA, a public employee's conspiratorial and wrongful intent does not remove the employee's immunity when the employee's acts are within the scope of his or her duties. To hold a public official's immunity to be only qualified, as the dissent contends we should, would require a rejection of our rationale in *McBrayer,* if not legislative action.

**Conspiracy Claim Against the VanderVossens**

{17} The VanderVossens convinced the trial court that summary judgment on the conspiracy count was proper once the City Defendants were found to be immune. "The standard of review for a motion for summary judgment is whether there are any genuine issues of material fact and whether the moving party is entitled to summary judgment as a matter of law." *Williams v. Cent. Consol. Sch. Dist.,* 1998–NMCA–006, ¶ 7, 124 N.M. 488, 952 P.2d 978; *see also* Rule 1–056(C) NMRA; *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (reviewing questions of law de novo). Because the relevant facts are not in dispute, we consider whether the trial court's legal interpretation of the facts was appropriate. *Garrity v. Overland Sheepskin Co.,* 1996–NMSC–032, ¶ 29, 121 N.M. 710, 917 P.2d 1382.

{18} Civil conspiracy consists of showing "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Silva v. Town of Springer,* 1996–

NMCA–022, ¶ 25, 121 N.M. 428, 912 P.2d 304. "Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators." *Ettenson*, 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440 (internal quotation marks and citation omitted). "Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense." *Id.*

{19} The VanderVossens rely heavily on *Ettenson* for the proposition that a claim of conspiracy cannot lie "unless a civil action in damages would lie against one of the conspirators." *Id.* (internal quotation marks and citation omitted). The VanderVossens and the trial court read this to mean that, once the City Defendants were found to be immune, then there could be no civil action *in damages* against one of the co-conspirators, and therefore, the conspiracy falls away as a matter of law. We disagree. *Ettenson* did not involve a situation in which the co-conspirators were immune under the TCA. *See id.; see also State v. Wenger*, 1999–NMCA–092, ¶ 10, 127 N.M. 625, 985 P.2d 1205 (stating that cases are not authority for propositions not considered) *rev'd on other grounds sub nom. State v. Johnson*, 2001–NMSC–001, 130 N.M. 6, 15 P.3d 1233. In addition, and more importantly, a claim of civil conspiracy is a claim seeking to impute liability from one co-conspirator to another. *Ettenson*, 2001–NMCA–003, ¶ 12, 130 N.M. 67, 17 P.3d 440. Consequently, even if the City Defendants cannot be made to respond in damages for their actions in furtherance of the conspiracy, liability for those actions can be imputed to the VanderVossens if Plaintiffs can prove the existence of a conspiracy between the VanderVossens and the City Defendants.

{20} As our Supreme Court said in *Armijo v. National Surety Corporation*, "[t]he gist of the civil action for conspiracy is the act or acts committed in pursuance thereof—the damage—not the conspiracy or the combination." 58 N.M. 166, 177–78, 268 P.2d 339, 346 (1954) (internal quotation marks and cita-

tion omitted). We find it significant that this observation refers to "damage" rather than "damages." The operative focus for determining whether liability may be imputed is on the acts and the injury resulting from those acts, not on whether a given conspirator may be held liable for damages.

{21} Thus, if Plaintiffs can prove that the VanderVossens conspired with the City Defendants and that the City Defendants took actions constituting malicious abuse of process, the City Defendants' actions can be imputed to the VanderVossens, who will then be jointly and severally liable for Plaintiffs' resulting damages. We find support for this view in a recent case involving another type of vicarious liability, *Juarez v. Nelson*, 2003–NMCA–011, 133 N.M. 168, 61 P.3d 877. In that case, we held that the dismissal of a medical malpractice claim against a doctor pursuant to the Medical Malpractice Act's statute of repose could not be asserted by the doctor's employer as a defense to vicarious liability. *Id.* ¶ 2. We concluded that "a judgment against a plaintiff and in favor of an employee-defendant does not preclude an action against the employee's principal where the judgment in the action against the employee was based solely on a defense that was personal to the employee." *Id.* ¶ 28; *see also Restatement (Second) of Judgments* § 51(1)(b) (1982) (same). We see no reason why this principle should not apply under the circumstances in the present case. As the statute of repose in *Juarez* shielded the employee from liability, the TCA similarly shields the City Defendants from liability, not from suit. *See Allen v. Bd. of Educ.*, 106 N.M. 673, 675, 748 P.2d 516, 518 (Ct.App. 1987) (explaining that the TCA "provides a defense to liability, but not absolute immunity from suit"). The City Defendants' immunity defense is personal to them and cannot be raised as a defense by the VanderVossens.

{22} The VanderVossens rely on *Bauer v. College of Santa Fe*, 2003–NMCA–121, 134 N.M. 439, 78 P.3d 76, and cases from other jurisdictions for the proposition that "where the underlying claim fails as a matter of law, there can be no derivative liability under the doctrine of civil conspiracy." We are not persuaded. In *Bauer* and the other cases

cited by the VanderVossens, the underlying claim failed on the merits. *See, e.g., Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1194–95 (5th Cir.1995) (stating that if alleged tort underlying a conspiracy is determined not to have occurred, there can be no liability for conspiracy); *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.,* 7 Cal.4th 503, 28 Cal.Rptr.2d 475, 869 P.2d 454, 463 (1994) (concluding that as a matter of substantive law, a party to a contract may not be liable under a conspiracy theory for interference with the contract); *Bauer,* 2003–NMCA–121, ¶¶ 12, 15, 16, 134 N.M. 439, 78 P.3d 76 (holding that no claim for civil conspiracy would lie where summary judgment was properly granted on underlying breach of contract claim). Here, there has been no determination on the merits of whether the City Defendants actually engaged in the acts in which they are alleged to have conspired. *Cf. Juarez,* 2003–NMCA–011, ¶ 28, 133 N.M. 168, 61 P.3d 877 (explaining that exoneration of a servant operates to exonerate the employer only when the exoneration is on the merits of the claim against the servant).

{23} The VanderVossens further argue that permitting Plaintiffs' conspiracy claim would result in the City Defendants remaining involved in the litigation as "hypothetical" parties, which would defeat the TCA's goals of protecting government entities from functioning without the threat of suit. We do not agree. The City Defendants will not be parties, hypothetical or otherwise, to this litigation because they are immune from liability. Although they may be called as witnesses, the TCA does not protect government actors from the courts' subpoena power. It is Plaintiffs' burden to demonstrate that the City Defendants' actions were wrongful and may serve as a basis for the VanderVossens' imputed liability. The VanderVossens may defend themselves by establishing that the City Defendants' actions were proper and did not result in any injury to Plaintiffs. This is no different from the burdens imposed in comparative negligence cases where the parties must deal with evidence of the negligence of non-party tortfeasors. *See Bartlett v. N.M. Welding Supply, Inc.,* 98 N.M. 152, 159, 646 P.2d 579, 586 (Ct.App.1982) (explaining that non-party tortfeasors must be in-

cluded in the apportionment of comparative fault), *superseded in part on other grounds by* NMSA 1978, § 41–3A–1 (1987).

{24} In summary, if Plaintiffs are able to prove the elements of a civil conspiracy, including the element that the City Defendants carried out specific wrongful acts in furtherance of the conspiracy, the liability for those acts may be imputed to the VanderVossens despite the City Defendants' immunity from liability. We hold that Plaintiffs' claim of civil conspiracy against the VanderVossens is not barred as a matter of law, and it is for a jury to evaluate the legitimacy of the claim.

{25} The VanderVossens make an additional argument, apparently raised but not ruled on below, that Plaintiffs failed to state a claim for civil conspiracy in their complaint. We disagree. The complaint contains a count entitled "Conspiracy/Joint Participation," and contains allegations throughout suggesting that all Defendants agreed and combined to commit various wrongful acts. That is sufficient. *See Valles v. Silverman,* 2004–NMCA–019, ¶ 28, 135 N.M. 91, 84 P.3d 1056 (explaining that a complaint states a claim for civil conspiracy if the allegations are such that we can infer the existence of a conspiracy).

## CONCLUSION

{26} For these reasons, we affirm the trial court's dismissal of the City Defendants. We reverse the trial court's summary judgment on the conspiracy count against the Vander-Vossens, and remand for proceedings consistent with this opinion.

{27} **IT IS SO ORDERED.**

I CONCUR: JONATHAN B. SUTIN, Judge.

IRA ROBINSON, Judge (concurring in part and dissenting in part).

ROBINSON, Judge (concurring in part and dissenting in part).

{28} I would not recognize a grant of immunity from liability for the Mayor, or any of the City Defendants who are accused of malicious conduct by intentionally carrying out their personal and political vendettas

against their political adversaries. I do not believe that the law should or does provide them with a place to safely hide from civil prosecution under the Tort Claims Act.

{29} Those with whom the City Defendants conspire to accomplish their wrongful goals do not escape liability. Neither should the City Defendants. I therefore dissent.

{30} I am convinced that New Mexico ought to follow those states that do not recognize immunity for public employees or officials who are guilty of malicious acts. *See Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 158 (Alaska 1987) (stating that "[u]nder a rule of qualified immunity, a public official is shielded from liability only when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt"); *Trimble v. City & County of Denver*, 697 P.2d 716, 729 (Colo.1985) (stating that "an official performing discretionary acts within the scope of his office enjoys only qualified immunity. He is shielded from liability for civil damages only insofar as his conduct is not willful, malicious or intended to cause harm"); *Podruch v. State Dep't of Pub. Safety*, 674 N.W.2d 252, 254 (Minn.Ct.App.2004) (stating that "[t]he doctrine of official immunity protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of willful or malicious wrong"); *Huber v. N.C. State Univ.*, 163 N.C.App. 638, 594 S.E.2d 402, 408 (2004) (stating that "[p]ublic official immunity does not protect a public official from liability based on corrupt or malicious actions").

{31} The TCA also mentions malice in the indemnity section. *See* § 41–4–4(E). That section provides that a government entity has the right to indemnification from a public employee for sums expended in defending the employee or paying a judgment if the employee "acted fraudulently or with actual intentional malice causing the bodily injury, wrongful death or property damage." *Id.* Although this section is somewhat puzzling because the public employee must have been sued and suffered a judgment, it shows the legislature's disdain for a public employee

who demonstrates the same malice that I find so despicable.

{32} The majority believes that there is no clear indication that the legislature wanted to waive immunity for a public official, other than a law enforcement officer, who misuses the enforcement machinery of government.

{33} I would rely on *Oldfield v. Benavidez*, 116 N.M. 785, 867 P.2d 1167 (1994), which explains that opposing these policies is the concern that sovereign immunity can result in unfairness and deny the public the right to any redress for the abuse of government power. I certainly share this concern when public officials misuse their governmental authority and power to the point of maliciousness.

{34} Where these same officials misuse the machinery of government and do so maliciously, they shatter the public trust and injure those who they are sworn to protect. The majority believes the legislature has resolved the conflict presented in this case in favor of granting public officials broad latitude to proceed without fear of lawsuits. I suspect that is why public officials do wrong—because they have no such fear.

{35} The majority relies on *McBrayer*, which dealt with a university instructor who lured a student to his apartment and sexually assaulted her. This Court upheld that public employee's immunity from prosecution. I do not agree with the holding in *McBrayer*. I ask the question: "Are these public officials or employees serving the public interest or violating it?"

{36} The majority states that the "City Defendants' wrongful motive is simply irrelevant, as long as there is 'a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform.' " Majority Opinion ¶ 10 at 862. I cannot agree that wrongful motive is simply irrelevant. I would hold that malicious actions by a public official disconnect him from his scope of public duty.

{37} Let me be quite clear. I appreciate the difficulty of serving as a public official whether elected or appointed. It may well be that the legislature drew a line in the sand

keeping members of the public from harassing and frivolously suing public officials. But once a public official crosses over that line and commits malicious acts against others, he loses that cloak of immunity.

## CONCLUSION

{38} I concur with the majority in reversing and remanding the trial court's summary judgment on the conspiracy count against the VanderVossens.

{39} For the reasons stated above, I respectfully dissent from the majority's affirmance of the dismissal of the City Defendants under Tort Claims immunity.