2004-NMSC-005

85 P.3d 239

**Jesus CELAYA, Plaintiff–Respondent,**

v.

**Lin HALL, Defendant–Petitioner.**

**No. 28,076.**

Supreme Court of New Mexico.

Jan. 29, 2004.

Butt, Thornton & Baehr, P.C., Emily A. Franke, Paul T. Yarbrough, Albuquerque, NM, for Petitioner.

John Wayne Higgins & Associates, John Wayne Higgins, Albuquerque, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} Lin Hall ("Defendant") appeals from an opinion of the Court of Appeals reversing a grant of summary judgment entered in his favor. The Court of Appeals found genuine issues of material fact concerning two issues arising under the Tort Claims Act: (1) whether Defendant, a volunteer chaplain for the Bernalillo County Sheriff's Department ("the Department"), was a public employee, and if so, (2) whether Defendant was acting within the scope of his duties when he ran over the foot of Plaintiff Celaya with his automobile while driving in the parking lot at Wal–Mart. *Celaya v. Hall,* 2003–NMCA–086, 134 N.M. 19, 71 P.3d 1281. We reverse in part, holding as a matter of law that Defendant was a public employee at the time of the incident. We also affirm in part, agreeing with the Court of Appeals that a genuine issue of fact exists for the fact finder to decide whether Defendant was acting within the scope of his duties at the time of the incident.

## BACKGROUND

{2} In November 1996, Plaintiff was a sixteen-year-old, part-time employee at Wal–Mart. Early in the evening of Saturday, November 16, Plaintiff was collecting shopping carts from the parking lot when Defendant drove over his foot, causing Plaintiff to suffer various injuries. Defendant, a volunteer chaplain with the Department, was driving a Department vehicle at the time.

{3} Defendant is an ordained minister and has been a volunteer chaplain with the Department since 1988. His duties as a volunteer chaplain include providing spiritual counseling to crime victims and their families, counseling sheriff's deputies, presiding over ceremonies like weddings and graduations, and providing support services at crime scenes. Defendant does not maintain regular hours, but is on call twenty-four hours a day, seven days a week. The Department has provided Defendant with an unmarked, take-home vehicle equipped with a sheriff's radio. The Department also provided a pager and business cards that identify Defendant as the Department chaplain.

Independently, Defendant also maintains a full-time, compensated position as a minister with Teen Challenge of New Mexico.

{4} Defendant concedes that his trip to Wal–Mart. was a personal errand. He frequently shops there because the store is close to his home. Through the course of pre-trial discovery, Defendant has been unable to remember what he was doing just prior to his trip to Wal–Mart., but states under oath that it was his custom to drive the Department vehicle only in connection with his official chaplain duties.

{5} Plaintiff filed a complaint to recover damages in October 1999, 2 years and 11 months after the incident. The complaint named as defendants the County of Bernalillo, the Department, and Defendant. In response, all defendants filed a motion to dismiss due to Plaintiff's failure to comply with the two-year statute of limitations in NMSA 1978, Section 41–4–15 (1977) of the Tort Claims Act ("TCA"). Thereafter, on Plaintiff's motion, the claims against Bernalillo County and the Department were dismissed. Plaintiff filed an amended complaint against Defendant, in his individual capacity, claiming that at the time of the incident Defendant was not acting either as a Department employee or within the scope of his official duties and, therefore, was not protected by the TCA two-year statute of limitations.

{6} Defendant then filed a motion for summary judgment, claiming that the TCA applied because, based upon the undisputed material facts, Defendant was a public employee acting within the scope of his duties at the time of the incident. The district court agreed with Defendant and granted summary judgment in his favor. On Plaintiff's appeal, the Court of Appeals reversed the summary judgment, finding genuine issues of material fact regarding both questions: Defendant's status as an employee and whether he was acting within the scope of his duties at the time of the incident that injured Plaintiff. *Celaya,* 2003–NMCA–086, ¶ 1, 134 N.M. 19, 71 P.3d 1281. We granted Defendant's petition for certiorari to determine whether either question, or both, should have been decided in Defendant's favor as a matter of law.

## DISCUSSION

### Standard of Review

■ {7} We review the grant of summary judgment de novo and construe reasonable inferences from the record in favor of the party opposing the motion. *See Rummel v. St. Paul Surplus Lines Ins. Co.,* 1997–NMSC–042, ¶ 9, 123 N.M. 767, 945 P.2d 985.

### Public Employee Status Under the TCA

■ {8} Liability of public employees acting within their scope of duty is governed by the TCA, NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 2003). The TCA delimits the scope of liability for government entities and their employees by: (1) retaining immunity for torts not waived by the TCA, *see* Section 41–4–2(A) (1976); and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty, *see* § 41–4–4 (1996). The TCA specifically provides that it is "the exclusive remedy . . . for any tort for which immunity has been waived." *See* § 41–4–17(A) (1982). The TCA enumerates who qualifies as a "public employee," and excludes most categories of independent contractors. Section 41–4–3(F)(3) (1995) specifically defines "public employee" as "persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." Therefore, the TCA explicitly contemplates that volunteers acting on behalf of the government may become public employees, thereby entitled to the protections of the TCA and subject to reliability of the same.

{9} We are struck by the express declaration of legislative intent in including volunteers acting on behalf of a governmental entity within the purview of the TCA. *See* § 41–4–3(F)(3). The legislature made an express choice to include volunteers in the TCA, presumably in recognition of the important contribution volunteers can provide through government service. In so designating uncompensated persons working on behalf of the government, the legislature took action to protect both the volunteer and the public. The law protects the volunteer by providing immunity for an act not included within the TCA, and by affording the volunteer indemnification and a defense when immunity has been waived. *See* § 41–4–4. Either way, the TCA treats the volunteer the same as any other employee, thereby encouraging volunteer participation in government. The TCA also protects the public by ensuring that government will be financially accountable when volunteers working within their scope of duty commit certain torts and injure innocent members of the public. Mindful of these purposes to protect both the volunteer and the public, we interpret the TCA so as to give life to legislative intent.

{10} Despite taking a contrary position in his original pleadings, Plaintiff now contends that Defendant was an independent contractor, not a public employee, when the incident occurred. If Defendant was an independent contractor, he would not fall within the purview of the TCA. Potentially, this determination could render Defendant personally liable for the damages resulting from the incident, because the TCA two-year statute of limitations and the provisions for indemnification under the TCA would not apply.

■ {11} New Mexico courts have employed an agency analysis to determine whether an individual is acting as an independent contractor or as an employee. In *Harger v. Structural Services, Inc.,* 121 N.M. 657, 664, 916 P.2d 1324, 1331 (1996), we adopted the Restatement (Second) of Agency § 220 (1958) to identify an independent contractor for purposes of workers' compensation. Under an agency analysis, the principal's right to control the individual performing the work often distinguishes an employee from an independent contractor. *See, e.g., Harger,* 121 N.M. at 663, 916 P.2d at 1330; *Armijo v. Dep't of Health & Env't,* 108 N.M. 616, 620, 775 P.2d 1333, 1337 (Ct. App.1989) (applying the agency right to control test to a TCA claim).

{12} A right to control analysis focuses on whether the principal exercised sufficient control over the agent to hold the principal liable for the acts of the agent. With the right of control, an employer-employee relationship usually exists. *Harger,* 121 N.M. at 667, 916 P.2d at 1334. However, the right to control approach may not always be the most

appropriate test, particularly for a professional. In a case concerning whether a hospital was bound by the acts of an emergency room physician, the court observed, "[t]he use of the right to control test in determining whether a professional is an employee has been criticized." *Houghland v. Grant,* 119 N.M. 422, 426, 891 P.2d 563, 567 (Ct.App. 1995).

{13} In the case before us, the Court of Appeals applied the right to control test by identifying an independent contractor as an individual whose overall work product, but not the details of work performance, is controlled. *Celaya,* 2003–NMCA–086, ¶ 7, 134 N.M. 19, 71 P.3d 1281. The court then relied upon the affidavits of Ray Gallagher, Bernalillo County Sheriff from 1991 to 1994, and his successor, Joe Bowdich, Bernalillo County Sheriff from 1995 to 2002, to determine whether there was a genuine issue of material fact concerning the Department's exercise of control over the details of Defendant's work performance. *Id.* ¶ 8. Sheriff Gallagher states in his affidavit that "[t]he Sheriff's Department does not control the manner in which the details of [Defendant] Lin Hall's work is performed." Sheriff Bowdich's affidavit states the contrary, that he supervised Defendant's chaplain duties. As a result of this apparent conflict, the Court of Appeals concluded "[t]here is a genuine issue of fact as to whether Defendant was an independent contractor because of the Department's lack of actual control over, or right to control, the details of his work." *Id.* ¶ 8.

{14} We question this conclusion. Our case law indicates that the right to control analysis is more complex, and demands a more nuanced approach, than simply determining the degree of control over the details or methods of the work. *Harger,* 121 N.M. at 667, 916 P.2d at 1334. In *Harger,* this Court recognized the inconsistency that can result from applying the right to control test in its simplest form, when identifying an independent contractor for purposes of the Workers' Compensation Act. *Id.* at 663–64, 916 P.2d at 1330–31. To address this inconsistency, we adopted the approach taken in the Restatement (Second) of Agency § 220, which incorporates many factors into the cal-

culus of employee versus independent contractor. *Harger,* 121 N.M. at 664, 916 P.2d at 1331. This approach is well-suited to a similar analysis under the TCA.

{15} The Restatement suggests a number of considerations for determining whether an individual is acting as an employee or independent contractor, only one of which is the degree of control the principal exercises over the details of the agent's work. Restatement (Second) of Agency § 220(2)(a-j). Other considerations include: 1) the type of occupation and whether it is usually performed without supervision; 2) the skill required for the occupation; 3) whether the employer supplies the instrumentalities or tools for the person doing the work; 4) the length of time the person is employed; 5) the method of payment, whether by time or job; 6) whether the work is part of the regular business of the employer; 7) whether the parties intended to create an employment relationship; and 8) whether the principal is engaged in business. *Id.* Furthermore, a complete analysis may require an assessment not only of the relevant factors enumerated in the Restatement, but of the circumstances unique to the particular case. *See Harger,* 121 N.M. at 667, 916 P.2d at 1334.

> [N]o particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive. Rather, the totality of the circumstances should be considered in determining whether the employer has the right to exercise essential control over the work or workers of a particular contractor.

*Id.*

{16} As a result, our determination must reach beyond the competing affidavits of Sheriffs Gallagher and Bowdich. The essential facts are not in dispute. At the time of the incident with Plaintiff, Defendant had been an official Department chaplain for eight years. As part of his official duties, Defendant was summoned to crime and accident scenes by the Department on an as-needed basis where he provided counseling and support services to civilians. He also maintained regularly scheduled duties, including giving invocations and benedictions

at graduations, presiding over weddings, and providing spiritual counseling to deputies and their families at their request.

{17} Thus, Defendant was not "self-directed," as maintained by Plaintiff. To the contrary, he was assigned particular duties by the Department, to be performed at both specific, pre-arranged times and on an as-needed basis. The Department alerted Defendant when chaplain services were requested. In addition, a deputy requesting spiritual counseling could contact Defendant directly, and Defendant was authorized to assist stranded motorists he might encounter while in the Department vehicle. Other than those two situations, Defendant acted primarily at the Department's request. When Defendant saw the need for chaplain's services, he would alert the Department and request permission to proceed. And, at all times, the Department provided Defendant with the instrumentalities necessary to carry out the regular business of the employer, including a vehicle, pager, radio, and official departmental business cards.

{18} Importantly, the degree of supervision the Department exercised over Defendant was proportionate to the professional nature of Defendant's position. Defendant is a career minister. Many of Defendant's official duties are focused upon providing spiritual counseling and support to accident survivors, crime victims, and departmental personnel and their families. These services, like those of the emergency room physician in *Houghland,* require special skills and a private setting; they are not amenable to detailed performance management.

{19} We reject Plaintiff's assertion that the lack of detailed supervision of Defendant's duties renders him an independent contractor. Inherently, many jobs, particularly those at a professional level, must be performed with a certain degree of latitude and even independence. The Restatement contemplates just such an arrangement and its consequences. *See* Restatement (Second) of Agency § 220(2)(c) (calling for consideration of "the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the em-

ployer or by a specialist without supervision").

{20} Applying all the factors in the Restatement to Defendant's job, and in light of the totality of the circumstances, we conclude that at the time of the incident Defendant undoubtedly was an employee of the Department. Considered in context, the Department exercised sufficient control over Defendant's activities in a manner consistent with the status of employee. As we stated earlier, the TCA specifically provides that volunteers can be employees. We discern no genuine issue of material fact on any of these questions. Thus, the district court properly entered summary judgment in Defendant's favor on this question.

{21} Parenthetically, the Court of Appeals also looks to the apparent authority doctrine to distinguish employees from independent contractors and suggests the presence of an issue of fact on this question. *Celaya,* 2003–NMCA–086, ¶ 7, 134 N.M. 19, 71 P.3d 1281. We disagree. Apparent authority is created when a principal represents to a third party that another is his agent, and the third party believes in the agent's authority. *See* Restatement (Second) of Agency: *Apparent Authority* § 8 (1958). However, Plaintiff was not receiving services from the Department at the time of the incident; he was given no information on which to rely regarding Defendant's status as an agent of the Department. Plaintiff had no relationship with Defendant, other than as a result of this incident. Therefore, the apparent authority doctrine is no help to the legal analysis of this case and cannot create a genuine issue of material fact.

### Scope of Duties

{22} The TCA compensates victims for certain tortious acts committed by public employees while acting within their "scope of duties." *See* § 41–4–3(G). The TCA defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." Section 41–4–3(G). By adopting the phrase "scope of duties," the legislature "created and defined a unique standard

to be applied to TCA claims based upon acts of public employees." *Risk Mgmt. Div. v. McBrayer*, 2000 NMCA 104, ¶ 8, 129 N.M. 778, 14 P.3d 43. The legislative choice of this phrase sets the standard apart from the common-law concept of "scope of employment." *Id.* The distinction between the two terms, "scope of duties" and "scope of employment," was first discussed in *Medina v. Fuller*, 1999–NMCA–011, ¶¶ 9–10, 126 N.M. 460, 971 P.2d 851.

{23} We find *Medina* helpful to our analysis because the facts are analogous to the case before us. A deputy sheriff was driving a department vehicle home from work when she stopped for a personal errand and became involved in a traffic accident. *Id.* ¶ 2. The deputy was on-call and prepared to respond when the accident occurred. *Id.* ¶ 5. In analyzing the deputy's scope of duties under the TCA, the Court of Appeals noted that she was authorized to use the department vehicle to travel to and from work. *Id.* ¶ 11. The deputy's continuous use of an official vehicle was a benefit to the sheriff's department; it was "permitted, if not required . . . in order to facilitate her investigative duties." *Id.* The court concluded that the deputy's use of the vehicle to travel home from work was "within the literal definition of [her] 'scope of duties.' " *Id.* ¶ 12. With one exception to be discussed shortly, the record in *Medina* supports a similar conclusion in Defendant's case.

{24} In a more recent opinion, *McBrayer*, 2000–NMCA–104, ¶¶ 8, 17, 129 N.M. 778, 14 P.3d 43, the Court of Appeals examined the reach of the "scope of duties" clause in even more detail, and again concluded that it represents a departure from the "scope of employment" standard and extends beyond officially authorized or requested acts. In *McBrayer*, a New Mexico State University instructor assaulted a student who had visited the instructor's apartment to obtain class assignments. Although of course the attack was unauthorized, the court identified a nexus between the instructor's authorized duties and his after-class interaction with a student seeking class assignments. *Id.* ¶¶ 3–4. This connection was sufficient to conclude that the unauthorized attack might fall within the instructor's "scope of duties" of the TCA. "Because it appears that [the instructor] used this authorized duty as a subterfuge to accomplish his assault, we find that a reasonable fact finder could determine that his actions were within the scope of the duties that NMSU requested, required or authorized him to perform." *Id.* ¶ 20.

{25} In *McBrayer*, the court refused to limit "scope of duties" to only those *acts* officially requested, required or authorized because, contrary to legislative intent, it would render all unlawful acts, which are always unauthorized, beyond the remedial scope of the TCA. *Id.* The *McBrayer* opinion further observed that excluding all unauthorized criminal or tortious acts by public employees is irreconcilable with the indemnification provisions of the TCA, *see* §§ 41–4–4(E), –17(A) (1982), which permit the state to recover defense and settlement costs from employees who have "acted fraudulently or with actual intentional malice." Thus, the TCA clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity.

{26} We find the two opinions instructive. In both *Medina* and *McBrayer*, there was a connection between the public employee's actions at the time of the incident and the duties the public employee was "requested, required or authorized" to perform. Section § 41–4–3(G). In the case at bar, Defendant must also demonstrate such a connection for his actions to fall within the TCA. The undisputed record shows that, as part of his duties and for the benefit of the Department, Defendant was "requested, required or authorized" to travel between work and home in an official vehicle. Further, like *Medina*, a minor deviation in the form of an incidental personal errand, does not take Defendant outside the scope of his official duties. Unlike Medina, however, Defendant does not recall his activities prior to the incident at Wal–Mart. Due to the passage of time, Defendant apparently cannot confirm that he was traveling home from a Department function or describe how much had passed since his last Department-related activity, when he made his stop at Wal–Mart. Thus, Defen-

dant has not yet established the kind of nexus between incident and duty that was present in *Medina*. Merely being on-call, without more, is insufficient. Although Defendant has not yet proven that nexus, he has managed to create an issue of fact as to its existence.

{27} Defendant claims that even though he is unable to recall his activities prior to the incident, it was his custom to drive the vehicle only when he was performing his chaplain's duties for the Department. In an affidavit, Defendant states that "I would occasionally stop in a store and run a personal errand on the way to or from a chaplain assignment, but I never drove the vehicle exclusively for my own personal use." This evidence of habit is the only indication in the record of what Defendant may have been doing prior to the incident. Because Defendant never drove his Department vehicle exclusively for personal use, and because he was driving it at the time of the incident, then he must have been coming from a "chaplain assignment" when he stopped off at Wal–Mart. Defendant is correct that this evidence, if believed by the fact-finder, could establish the necessary nexus between incident and "scope of duties" under the TCA. But the Court of Appeals properly held that "habit evidence alone cannot establish that no material fact issues existed regarding what Defendant was doing at the time of the accident." *Celaya*, 2003–NMCA–086, ¶ 12, 134 N.M. 19, 71 P.3d 1281 (citing *Sanchez v. Shop Rite Foods*, 82 N.M. 369, 370, 482 P.2d 72, 73 (Ct.App.1971)). The fact-finder must decide whether to accept Defendant's contention; the court may not do so on summary judgment.

 {28} Whether an employee is acting within the scope of duties is a question of fact, and summary judgment is not appropriate unless "only one reasonable conclusion can be drawn" from the facts presented. *Medina*, 1999–NMCA–011, ¶ 22, 126 N.M. 460, 971 P.2d 851. Because habit evidence is insufficient to resolve the factual issue for purposes of summary judgment, we remand this case to the district court for trial and specifically for a determination of whether Defendant was acting within his official scope of duties when the incident occurred. Only the fact-finder can decide whether to believe Defendant when he states, according to his custom or habit, that he was "on the way to or from a chaplain assignment" and that he "never drove the vehicle exclusively for [his] own personal use." Only the fact-finder can determine the weight, if any, to be given Defendant's testimony in regard to the purported nexus between the incident and Defendant's official duties.

## CONCLUSION

{29} We reverse in part and affirm in part and remand to the district court for further proceedings consistent with this opinion.

{30} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and EDWARD L. CHAVEZ, Justices.