**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WRONGFUL DEATH ESTATE OF
ROSEMARY NAEGELE,

    Plaintiff - Appellant,

v.

MUHAMMAD KHAWAJA,

    Defendant - Appellee.

No. 21-2000
(D.C. No. 2:19-CV-01165-GBW-SMV)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

The New Mexico Tort Claims Act ("TCA") establishes a two-year statute of

limitations for any claim brought against specified public employees acting within

the scope of their employment. In contrast, the New Mexico Medical Malpractice Act

("MMA") establishes a three-year statute of repose[1] for medical-malpractice claims

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

[1] Statutes of repose and limitation both operate as time bars on claims. The
difference is that statutes of repose generally cannot be tolled, operating instead as
hard deadlines.

brought against physicians. Here, the parties agree that the Estate filed suit more than two years after discovering Dr. Khawaja's alleged malpractice. Thus, the issue before the court today is whether the TCA's two-year statute of limitations applies to, and thus time bars, the Estate's medical-malpractice claim against Dr. Khawaja. The district court granted summary judgment for Dr. Khawaja on the TCA's statute-of-limitations grounds, concluding that the TCA applied because Dr. Khawaja was a public employee when he allegedly committed malpractice. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.     The Employment Agreement

In 2017, Dr. Khawaja entered into an employment agreement ("Agreement") with the Nor-Lea Hospital District ("Hospital"). In several places, the Agreement speaks of an employer-employee relationship between the Hospital and Dr. Khawaja. Because the extent of this relationship is relevant to whether Dr. Khawaja was a public employee and the applicability of the two-year statute of limitations, we start by summarizing its material provisions.

In the "Exclusive Service" paragraph of the Agreement, Dr. Khawaja agreed to provide professional services exclusively to the Hospital, unless he obtained the Hospital's permission to act otherwise. Aplt. App. 54, ¶ 2.4. Under the Agreement, the Hospital reserved the authority to direct what days he must work, what care he must provide, and where he must provide it. Recognizing the unique nature of medical treatment and advice, the Agreement stated that "[i]n the performance of

2

professional medical services hereunder, Physician shall exercise Physician's own professional judgment." Aplt. App. at 53, ¶ 2.1. Outside of that, it stated that Dr. Khawaja must abide by several Hospital policies or risk being terminated. *See* Aplt. App. at 55, ¶¶ 2.1–2.2. The Agreement also required Dr. Khawaja to indemnify the Hospital and others for claims based on actions that violated the Hospital's policies and were "committed by the Physician after Physician was advised by Hospital to modify such behavior, treatment style or pattern of conduct." Aplt. App. at 55, ¶ 2.6.

In exchange for Dr. Khawaja's services, the Hospital agreed to compensate Dr. Khawaja "in accordance with the Compensation Plan and Hospital's usual and customary payroll practices[.]" Aplt. App. at 52–53, ¶ 1.1. This included a salary of $1,900 per day, regularly paid according to a standard schedule of work, and Hospital-provided malpractice insurance. Dr. Khawaja's compensation was "subject to applicable withholding and other taxes." Aplt. App. at 52–53, ¶ 1.1. The Hospital also agreed to furnish all necessary "space, equipment, instruments, supplies, medicines, and support personnel for" Dr. Khawaja's practice. Aplt. App. at 60, ¶ 4.6. Finally, the Agreement granted the Hospital the responsibility, and exclusive right, to "establish the fees to be charged for professional services" rendered by Dr. Khawaja and to bill patients and retain payments. Aplt. App. at 59, ¶¶ 4.1–4.2.

## II.    Factual and Procedural History

On February 17, 2017, Ms. Naegele underwent gall-bladder surgery at Nor-Lea General Hospital in Lovington, New Mexico. Dr. Khawaja oversaw Ms. Naegele's post-surgical care. The next day, Ms. Naegele died, allegedly from surgical complications that Dr. Khawaja had left untreated.

About two weeks later, on March 1, 2017, counsel for the Estate sent a letter to the Hospital informing it that Ms. Naegele's Estate intended to file a medical-malpractice claim based on Dr. Khawaja's medical treatment and Ms. Naegele's death a day afterward. More than two years later, on May 21, 2019, different counsel filed on behalf of the Estate an "Application for Review of Medical Care and Treatment by Dr. Khawaja Muhammad [sic], M.D." with the New Mexico Medical Review Commission. During the Commission's proceedings, Dr. Khawaja didn't raise either a statute-of-limitations or a statute-of-repose defense, but he did reserve his right to raise any legal defenses available to him, clarifying that he didn't intend to waive any defenses by participating in the proceeding with the Commission. On September 18, 2019, the Commission issued a unanimous opinion that "there was evidence of professional negligence" on Dr. Khawaja's part, and that "there was a reasonable medical probability that the claimant was injured thereby." Aplt. App. at 103.

On November 15, 2019, the Estate sued Dr. Khawaja in New Mexico state district court. Dr. Khawaja removed the case to the federal court based on diversity.

Dr. Khawaja then moved for summary judgment on statute-of-limitations grounds. The district court granted Dr. Khawaja's motion and dismissed the Estate's claims.

## DISCUSSION

We review de novo an order granting summary judgment. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a genuine factual dispute exists only "if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson*, 514 F.3d at 1145.

This is a diversity case in which the Estate has brought New Mexico common-law claims. So we apply New Mexico law. *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 900 (10th Cir. 2005). One year after the "New Mexico Supreme Court abandoned common-law sovereign immunity," the New Mexico Legislature "responded by enacting the Tort Claims Act." *Fireman's Fund Ins. Co. v. Tucker*, 618 P.2d 894, 895 (N.M. Ct. App. 1980). The TCA re-established sovereign immunity for state entities and established categories of claims for which immunity is waived. *Id.* Thus, "for any tort for which immunity has been waived," the TCA operates as "the exclusive remedy." *Celaya v. Hall*, 85 P.3d 239, 242 (N.M. 2004) (quoting N.M. Stat. Ann. § 41-4-17(A)) (cleaned up). The TCA establishes a two-year statute of limitations for claims brought against governmental entities and public

employees. N.M. Stat. Ann. § 41-4-15. This limitations period can be tolled by the discovery rule. *Maestas v. Zager*, 152 P.3d 141, 146 (N.M. 2007). In contrast, New Mexico's Medical Malpractice Act ("MMA") establishes a three-year statute of repose for medical-malpractice claims, N.M. Stat. Ann. § 41-5-13, "without regard to the discovery of injury or damages," *Cahn v. Berryman*, 408 P.3d 1012, 1015 (N.M. 2017) (cleaned up).

Here, the Estate acknowledges that it sued later than two years after discovering Dr. Khawaja's alleged malpractice. Thus, the district court ruled the TCA's two-year statute of limitations bars the Estate's claims. The Estate opposes this result on three grounds. First, the Estate argues that a genuine issue of material fact exists about whether Dr. Khawaja is a public employee under the TCA. If he is not, then the TCA would not apply, and the MMA's three-year statute of repose would control. Second, the Estate argues that the TCA and MMA limitation periods conflict and that the court should supplant the TCA limitations period with the MMA repose period. Third, the Estate argues that Dr. Khawaja is equitably estopped from raising a statute-of-limitations defense under the TCA. Because these arguments fail, we affirm.

I.    **The District Court Properly Concluded That Dr. Khawaja Was a Public Employee Under the TCA.**

Under New Mexico law, the question of whether a person is an employee or independent contractor depends on "the circumstances unique to the particular case." *Celaya*, 85 P.3d at 243. The New Mexico Supreme Court has provided ten factors for

courts to consider when evaluating whether an individual is an employee or

independent contractor:

> (1)    "whether the employer is entitled to control the manner and means of the individual's performance"
> (2)    "the method of compensating the individual"
> (3)    "whether the employer has furnished equipment for the individual"
> (4)    "whether the employer has the power to terminate the individuals without cause"
> (5)    "the type of occupation involved and whether it is generally performed without supervision"
> (6)    "the skill required for the job"
> (7)    "whether the employer furnishes the tools or instrumentalities for the job"
> (8)    "how long the individual has been employed"
> (9)    "whether the work is part of the employer's regular business"
> (10)   "whether the employer is engaged in business activities."

*Blea v. Fields*, 120 P.3d 430, 436 (N.M. 2005).

In *Blea*, the New Mexico Supreme Court affirmed a grant of summary

judgment after concluding that a physician was a public employee. *See id.* at 435–37.

There, the physician had agreed to work exclusively for the hospital during hours

designated by the hospital, and the hospital had "compensated Defendant with a

salary, benefits, and insurance, as well as paying relevant taxes and professional dues

and providing him with leave time." *Id.* at 436. The employment agreement didn't

specify when the physician could be terminated, but it did require compliance with

certain hospital policies. *Id.* at 436–37. Finally, the hospital reserved the right to

"bill[] patients directly for all services provided," while promising to "provide[] all

of [the physician's] supplies, equipment, and staff," as well as workspace. *Id.* Based

on these facts, the *Blea* court concluded that the physician was an employee as a

matter of law. *Id.*

Applying *Blea*, we conclude that Dr. Khawaja was an employee. As in *Blea*,

the Agreement here (1) contained an exclusivity provision, (2) obligated him to work

hours designated by the Hospital, and (3) established the Hospital's right to terminate

him if he failed to comply with Hospital policies. *See Houghland v. Grant*, 891 P.2d

563, 566 (N.M. Ct. App. 1995) (holding that a physician's obligation to abide by

hospital policies is not dispositive, but it is relevant in resolving whether a physician

qualifies as a public employee). These facts demonstrate that the Hospital exercised

the types of control over Dr. Khawaja's work typical of a physician's employer.

The Hospital's compensation method also favors our concluding that Dr.

Khawaja is a public employee. The Agreement required the Hospital to compensate

Dr. Khawaja with a salary, regularly paid the same way as with other employees.

And his compensation was based on a work schedule set by the Hospital, not specific

projects. Moreover, the Hospital also withheld taxes from Dr. Khawaja's pay. *Cf.*

*Brim Healthcare, Inc. v. State, Tax'n and Revenue Dept.*, 896 P.2d 498, 500–01

(N.M. Ct. App. 1995) ("The professional could choose either to have the taxpayer

pay the workers' compensation coverage and withhold taxes, or to be legally

considered an independent contractor and be personally responsible for those

obligations."). And the Hospital paid his malpractice-insurance premiums. *See, e.g.*,

*Nash v. Blatchford*, 435 P.3d 562, 572 (Kan. Ct. App. 2019) (concluding under the

Restatement (Second) of Agency § 220 factors that a hospital's contractual duty to

provide a doctor with malpractice insurance weighs in favor of public-employee

8

status).[2] Thus, while the Estate argues Dr. Khawaja was an independent contractor because he did not receive fringe benefits, the other aspects of his compensation plan support the district court's conclusion that he acted as a public employee.

Dr. Khawaja's Agreement also granted the Hospital the exclusive right to bill patients and retain payments, demonstrating that his work "is part of the employer's regular business." *Blea*, 120 P.3d at 436. Finally, the Hospital agreed to provide all needed items, support personnel, and space for Dr. Khawaja's work—strong features of an employer-employee relationship. Thus, the facts today closely mirror those in *Blea* and satisfy several factors supporting public-employee status.[3]

The Estate argues that the Agreement's indemnification provision shows that "the parties contemplated that Defendant would indemnify Nor-Lea [Hospital] in broader circumstances than those permitted by the TCA," evincing their intent to not have the TCA apply. Op. Br. at 20. We disagree. The TCA allows indemnification for public employers "if it is shown that, while acting within the scope of his duty, the public employee acted fraudulently or with actual intentional malice[.]" N.M. Stat.

---

[2] Kansas and New Mexico have adopted Restatement (Second) of Agency § 220 for determining whether an individual is an employee or independent contractor. *See Brillhart v. Scheier*, 758 P.2d 219, 223 (Kan. 1988); *Celaya*, 85 P.3d at 242.

[3] The Estate argues that Dr. Khawaja was an independent contractor in part because the Agreement was only for six months and required him to "exercise [his] own professional judgment." *See* Aplt. App. at 53, ¶ 2.1. But Dr. Khawaja could be a full-time employee even if only for a limited duration. And a physician's "exercise of his own professional judgment in his practice . . . is neither dispositive nor particularly material to whether [he] was an employee . . . under the Tort Claims Act." *Blea*, 120 P.3d at 436.

Ann. § 41-4-4(E). The indemnification provision doesn't make Dr. Khawaja an independent contractor rather than an employee. For starters, it applies only to "improper acts of Physician violating Hospital policy *while an employee of Hospital*[.]" Aplt. App. at 55, ¶ 2.6 (emphasis added). In addition, the improper acts are not driven from Dr. Khawaja's medical care but instead must "result[] from any audit, investigation or other claim made by a third party (including but not limited to Medicare, Medicaid, any insurance company, managed care entity or other payor)" and be "committed by Physician after Physician was advised by Hospital to modify such behavior, treatment style or pattern of conduct." *Id.*

For these reasons, we conclude that Dr. Khawaja was a public employee subject to the TCA.

## II. The District Court Correctly Applied a Two-Year Statute of Limitations Period Under the TCA.

Under New Mexico law, statutory interpretation requires the court to "look first to the language used and the plain meaning of that language." *State v. Trujillo*, 206 P.3d 125, 129 (N.M. 2009). "Under the plain meaning rule, when a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.* (cleaned up). Here, the "TCA specifically provides that it is 'the exclusive remedy . . . for any tort for which immunity has been waived.'" *Celaya*, 85 P.3d at 242 (quoting N.M. Stat. Ann. § 41-4-17(A)). The TCA is unambiguous that a plaintiff suing a public-employee physician must meet the TCA's statute of limitation before ever facing the MMA's statute of repose. The

10

MMA has no language providing what the Estate now seeks—language saying that its three-year statute of repose supplants the TCA's two-year statute of limitations. Thus, "we will heed that language and refrain from further statutory interpretation." *Trujillo*, 206 P.3d at 129.

In arguing otherwise, the Estate argues that the MMA is the more specific statute to its claims, so the MMA should control. This argument fails because the general/specific doctrine applies only when "the two [statutes] cannot be harmonized." *State v. Arellano*, 943 P.2d 1042, 1044 (N.M. Ct. App. 1997). Here, the TCA and MMA don't conflict because the MMA's statute of repose works in tandem with the TCA's statute of limitations. The MMA's statute of repose limits the time the discovery rule can extend the TCA's statute of limitations. In effect, the MMA's repose period is a one-year cap on the TCA's limitations period's allowance of time in which to learn of the negligence. *Cf. California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2045 (2017) ("The pairing of a shorter statute of limitations and a longer statute of repose is a common feature of statutory time limits."); *Saludes v. Ramos*, 744 F.2d 992, 996 (3d Cir. 1984) (applying the Virgin Islands' medical-malpractice and tort claims act statutes together).

Applying these rules here, the Estate indisputably filed suit over two years after discovering Dr. Khawaja's alleged malpractice. Thus, its claims are time-barred by the TCA's two-year statute of limitations. The MMA's statute of repose never comes into play.

11

### III.    The District Court Did Not Abuse Its Discretion in Rejecting the Estate's Equitable-Estoppel Argument.

Under New Mexico law, a party may be equitably estopped "from asserting a statute of limitations" defense if it has "(1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed." *Blea*, 120 P.3d at 438. "The party relying on a claim of equitable estoppel has the burden of establishing all facts necessary to prove it." *Little v. Baigas*, 390 P.3d 201, 209 (N.M. Ct. App. 2016) (cleaned up). Here, the Estate argues for equitable estoppel on two grounds. Both fail.

First, the Estate argues that Dr. Khawaja should be equitably estopped from asserting a statute-of-limitations defense under the TCA because he concealed his status as a public employee. But the Estate has introduced no evidence that Dr. Khawaja *intended* to deceive the Estate. This is a sufficient basis to affirm. *See Blea*, 120 P.3d at 439 (concluding that an equitable estoppel argument failed because "Plaintiff offered no testimony or evidence to suggest that Defendant intentionally sought to conceal his employee status"); *Baigas*, 390 P.3d at 210–11 ("We agree with Little that there was 'no evidence whatsoever' before the district court as to Baigas's intent, as we observe that it is Little's burden to establish Baigas's intent as an element of fraudulent concealment to support his estoppel claim.").

12

The Estate's reliance on *Hagen v. Faherty*, 66 P.3d 974 (N.M. Ct. App. 2003) is misplaced. In *Hagen*, the New Mexico Court of Appeals held that a public-employee physician was equitably estopped from raising a statute-of-limitations defense under the TCA. *Id.* at 977. The *Hagen* court explained that "[b]y choosing to place its physician . . . at . . . a private institution, and not identify him as a public employee working in a public capacity, the state engaged in conduct that conveyed the indisputable impression to persons wishing to assert a claim that [the physician] was an employee of the private institution." *Id.* at 978. There, the physician had worn a private-hospital identification badge, had worked alongside exclusively private physicians, had not listed his public-hospital employer on the plaintiff's medical records or bills, and had never disclosed his true employer to the plaintiff. *See id.* at 978–79.  The court found this satisfied the elements of equitable estoppel because, based on the physician's intent and misrepresentations, "no reasonable person could have concluded that [the physician] was an employee of [a public hospital]." *Id.* at 979.

In contrast to *Hagen*, Dr. Khawaja treated Ms. Naegele in a public hospital, and the Estate hasn't identified similar circumstances here. Based on the facts of the Estate's case, nothing supports a notion that anyone led Ms. Naegele to reasonably believe that Dr. Khawaja worked for anything other than a public hospital. Thus, *Hagen* is distinct.

Second, the Estate argues that equitable estoppel should apply because Dr. Khawaja did not raise a statute-of-limitations defense before the New Mexico

Medical Review Commission. The Estate cites no authority supporting this argument. This argument is, in essence, a waiver claim, not an equitable estoppel claim. Here, Dr. Khawaja didn't waive his statute-of-limitations defense by failing to raise it before the Commission. The Commission is charged with evaluating fact issues, not legal ones. N.M. Stat. Ann.§ 41-5-20(A) ("[T]he panel shall decide only two questions: (1) whether there is substantial evidence that the acts complained of occurred and that they constitute malpractice; and (2) whether there is a reasonable medical probability that the patient was injured thereby."). Raising a statute-of-limitations defense before the Commission would have served no purpose. Nonetheless, he informed the Estate of his intent to raise other legal defenses if the matter went to court. Thus, the Estate's equitable estoppel claim fails.

## CONCLUSION

For these reasons, we affirm the district court's dismissal of the Estate's claims with prejudice.[4]

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[4] Accordingly, we deny the Estate's motion to certify a question to the New Mexico Supreme Court about if the TCA's two-year statute of limitations or the MMA's three-year statute of repose governs this case.