This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40884**

**LDB PROPERTIES, LLC; and LAS CRUCES
COMPREHENSIVE REHABILITATION,
HOME CARE AND HOSPICE,**

  Plaintiffs-Appellants,

v.

**POOLS AND SPAS UNLIMITED d/b/a POOLS
BY DESIGN; FRANKLIN WELLS; JAY MILLER;
and NEW MEXICO ENVIRONMENTAL
DEPARTMENT,**

  Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
James T. Martin, District Court Judge**

Kemp Smith LLP
CaraLyn Banks
Las Cruces, NM

for Appellants

Gallagher, Casados & Mann P.C.
Wesley C. Jackson
Albuquerque, NM

for Appellees Pools & Spas Unlimited d/b/a Pools by Design
and Franklin Wells

Jay Miller
Las Cruces, NM

Pro Se Appellee

Lisa Chai
Albuquerque, NM

for Appellee N.M. Environment Department

## MEMORANDUM OPINION

**BLACK, Judge Pro Tem.**

**{1}** This appeal concerns a contract dispute over the construction of a therapy pool and integrated spa in Las Cruces, New Mexico. Defendant Pools and Spas Unlimited d/b/a Pools by Design (PBD), which is owned by Defendant Franklin Wells, submitted an unsigned proposal for the construction of a therapy pool to Shelly Borde, part owner of Plaintiff Las Cruces Comprehensive Rehabilitation, Home Care and Hospice (LCCR). Plaintiff LDB Properties, LLC (LDB) owned the lot where its tenant LCCR would operate aquatic therapy services, including the swimming pool. Defendant Jay Miller submitted construction plans for the pool, and the New Mexico Environmental Department (NMED) issued a construction permit, which authorized construction according to Miller's plans. Eventually, LCCR and LDB (collectively, Plaintiffs) sued Wells, PBD, Miller, and NMED. NMED settled and was dismissed by stipulated motion. The remaining Defendants PBD, Wells, and Miller went to trial. The district court determined that Miller's negligence resulted in damages but otherwise found in favor of Defendants. Plaintiffs appeal. For the reasons set forth below, we affirm.

## BACKGROUND

**{2}** Defendant Wells and Plaintiffs entered an agreement to build the therapy pool and according to the proposal, construction of the therapy pool was to adhere to the Model Aquatic Health Code (MAHC). The proposal also made clear however, that the "[p]ool [d]esign is subject to change based on the New Mexico Environmental Department's [r]eview." Although Borde recognized only three similar therapy pools had been built in all of southern New Mexico, she erroneously thought Wells had substantial experience in such design. Miller's first set of engineered plans called for a pool with an incorrect water turnover rate. NMED initially failed to identify the incorrect turnover rate provided in Miller's first set of plans. On September 11, 2018, NMED issued a construction permit, which authorized construction of the pool with the incorrect turnover rate. Thereafter, PBD substantially completed construction of the pool in accordance with Miller's first set of plans.

**{3}** When construction of the pool was nearly complete, NMED discovered the incorrect turnover rate. NMED also discovered that Miller's first set of plans omitted a secondary disinfection system. Plaintiffs were informed of the issues with Miller's plans and participated in meetings with NMED and others to determine whether modifications could be made to correct the problems. As a result of those meetings, it was agreed that Miller would upgrade the pool's pump and other equipment to achieve the required two-hour turnover rate and add a secondary disinfection system. After reviewing Miller's

updated plans, NMED confirmed that they would "meet the requirements of the regulation." NMED issued a permit to operate the pool in December 2019.

{4}     Plaintiffs filed a complaint for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, breach of warranty, negligence, negligent or intentional misrepresentations, violation of the Unfair Practices Act, equitable estoppel, and inverse condemnation.

{5}     Prior to trial, all parties submitted proposed findings of fact and conclusions of law. Miller failed to enter a legal appearance and raised no defense. Following the bench trial, the participating parties filed supplemental/amended findings of fact and conclusions of law. The district court entered an order striking these supplemental pleadings sua sponte. In its final judgment the district court concluded that Miller was negligent and liable for $56,959 and that PBD and Wells had no liability for Miller's conduct and had not breached the terms of the contractual relationship with Plaintiffs.

{6}     A glance at the complaint reveals that Plaintiffs prefer the shotgun approach, which they extend to this appeal. We lump some of the minor challenges together and consider the district court's rulings on breach of contract, limitation of evidence, and vicarious liability. Plaintiffs additionally challenge the district court's decision to strike the parties' post-trial submission of findings of fact and conclusions of law. On that front, Plaintiffs do not acknowledge that the district court struck the submissions because they did not comport with the court's instructions or LR3-205 NMRA and when Plaintiffs again attempted a post-trial submission, they did not alert the district court to the deficiencies in the pretrial submissions. Plaintiffs maintain that the district court's failure to accept supplemental submissions complicates our review, but we discern no error in the district court's actions under these circumstances. We turn to the remaining issues.

**Standard of Review**

{7}     Appellate courts "review[] the evidence in the light most favorable to [the a]ppellee[s] to determine whether there is substantial evidence to support the [district] court's ultimate finding[s] of fact." *Wisznia v. N.M. Hum. Servs. Dep't*, 1998-NMSC-011, ¶ 10, 125 N.M. 140, 958 P.2d 98. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M.137, 802 P.2d 1283. In reviewing whether substantial evidence exists, "appellate courts view the evidence and draw all reasonable inferences in the light most favorable to the findings of the district court." *Allred v N.M. Dep't of Transp.*, 2017-NMCA-019, ¶ 57, 388 P.3d 998.

{8}     "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Pro. Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "An appellate court should be wary of substituting its judgment for that of the trial court." *State v. Alberico*, 1993-NMSC-047, ¶ 63, 116 N.M. 156, 861 P.2d 192. "[W]hen there is

a conflict in the testimony, we defer to the trier of fact." *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33.

## DISCUSSION

### I. Breach of Contract

**{9}** On appeal, Plaintiffs argue that the district court incorrectly concluded that Defendants did not breach the terms of their agreement with Plaintiffs. Plaintiffs enumerate in extensive detail how their expert, Mr. Holmer, found the construction deviated from the contract as to the following: (1) turnover rate, (2) the backwash system, (3) downsized pipe, (4) spa jet height, and (5) bather load. The trier of fact has discretion to weigh the credibility and weight of expert testimony like any other admissible evidence. *See Alberico*, 1993-NMSC-047, ¶ 37. In each of their arguments Plaintiffs ignore the evidence supporting the district court's decision and default to a discussion of how that court ignored the evidence of their experts. Here the district court obviously found the testimony of Plaintiffs' experts less than persuasive.

**{10}** Moreover, we agree with Defendants that the district court made no findings or conclusions that it "excused" PBD or Wells from its contractual obligations. Rather, the district court found and concluded that PBD and Wells neither breached the agreement nor caused any damages. For example, the district court found that that Miller's original design was not sufficient to meet the MAHC standard. However, that does not prove Plaintiffs' breach of contract claim as the initial proposal contained the provision, "that the [p]ool [d]esign is subject to change based on the [NMED's r]eview."

**{11}** This raises another fallacy running through many of Plaintiffs' arguments, which seem to assume that the agreement specified Plaintiffs' expert, and not the NMED, to determine whether the design and construction met the MAHC standards. NMED reviewed and approved both sets of Miller's engineered plans, and inspected and approved the pool's final construction, and issued a "Permit to Operate." All subsequent annual inspections of the pool passed.

**{12}** Plaintiffs argue that "full compliance" with the MAHC was required and that "NMED regulations do not allow an applicant to choose which MAHC standards to comply with." Defendants do not dispute this. Again, it is not Defendant—or LCCR as the applicant—that chose the MAHC standards or determined compliance. The NMED determined MAHC applicability and compliance. The fact the NMED approval indicates compliance is supported, not contradicted, by the testimony of the former NMED pool program manager who testified that the NMED does not have a lot of discretion in deciding to allow a deviation from the MAHC. *See also* 7.18.1.12(B) NMAC ("No person shall deviate from the approved plans and specifications during the construction or alteration of public aquatic venues described in this rule without first receiving prior written approval from the department."). The agreement required Defendants to comply with the MAHC and NMED determined that they did just that. To the extent that Plaintiffs contend that Defendants otherwise performed the contract negligently or did

not construct the pool according to the plans, the district court appears to have rejected those contentions as a factual matter, determined no damages resulted from Defendants' acts, and/or limited its negligence findings to Miller's design. The district court found that the pool was constructed according to the original plans, and that after NMED discovered the error in the original plans, solutions were reached to bring the pool into compliance with the MAHC. As a result, we cannot conclude that the district court erroneously determined that Defendants did not breach the contract.

## II.     Denial of Mr. Jones' Testimony

{13}     Plaintiffs attempted to call a general contractor, Robert Jones, to testify as to the proper standard of care and Defendants' violation thereof. The district court curtailed his testimony somewhat but nonetheless allowed him to testify at length. Plaintiffs argue that "[i]f Mr. Jones would have been able to provide standard of care testimony regarding contractors generally, other negligent acts could also be added to this list" of negligent performance by Defendants. "We review the district court's decision to admit or exclude evidence for an abuse of discretion." *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Smith*, 2016-NMSC-007, ¶ 27, 367 P.3d 420 (text only) (citation omitted). We find clear logic in the district court's ruling here.

{14}     Mr. Jones was not disclosed as a standard of care expert and is not a swimming pool contractor and had never built a pool. The district court limited Mr. Jones' testimony only "based upon the question asked," in relation to the standard of care for contractors deviating from the plans of professional engineers. Even if the district court erred in excluding the limited testimony of Mr. Jones, however, on appeal Plaintiffs make no attempt to show that what Mr. Jones might have said would have proved additional negligence. Plaintiffs' other expert, Mr. Holmes, testified that the MAHC "states that no person shall deviate from the approved plans," but Wells testified that the deviations were "irrelevant"—from which the district court could infer no damages resulted. *See Cumming v. Nielson's, Inc.*, 1988-NMCA-095, ¶ 28, 108 N.M. 198, 769 P.2d 732 ("[T]he complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal.").

## III.     Defendants Are Not Vicariously Liable for Miller

{15}     Plaintiffs maintain the district court erred in not finding Defendants were the employers of Miller or that he was at least their agent. *See Keith v. ManorCare, Inc.*, 2009-NMCA-119, ¶ 19, 147 N.M. 209, 218 P.3d 1257 (explaining that an employer is only vicariously liable for an alleged employee's acts and "[t]he princip[le] test for determining whether an employer-employee relationship exists . . . turns on the right of the employer to control the work of the employee" (internal quotation marks and citation omitted)); *see also Celaya v. Hall*, 2004-NMSC-005, ¶¶ 10, 15, 135 N.M. 115, 85 P.3d 239 (listing at least eight additional factors in addition to "the degree of control the princip[le] exercises over the details of the agent's work," to determine whether an

individual is an employee or an independent contractor and whether the New Mexico Tort Claims Act applies). The district court clearly made findings that the details of Miller's work were not subject to the control of PBD or Wells and that (1) Miller is a licensed professional engineer; (2) Miller operated his own independent business; and (3) Miller "was not an employee of [PBD or Wells]." *See id.* ¶ 15.

**{16}** The district court's findings were supported by the record. Miller testified that his business and PBD are separate companies, and he had never been an employee of PBD, nor had he ever represented himself as an employee of PBD. Wells similarly testified that Miller has never been an employee of PBD, and Wells has never represented otherwise. In order to build the pool, NMED required PBD to submit the stamped plans of an engineer.

**{17}** Again, Plaintiffs point out how their testimony differed with regard to Miller. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof. Fire Fighters*, 1997-NMCA-044, ¶ 12. Based on the record presented, the district court had substantial basis to refuse to apply respondeat superior to Miller's relationship with the other two Defendants. *See Lessard v. Coronado Paint & Decorating Ctr. Inc.*, 2007-NMCA-122, ¶ 11, 142 N.M. 583,168 P.3d 155 ("Under the doctrine of respondeat superior, an employer can be held vicariously liable for the negligent actions of an employee who is acting within the scope of his employment.").

**CONCLUSION**

**{18}** For the above stated reasons, the judgment of the district court is affirmed.

**{19}   IT IS SO ORDERED.**

**BRUCE D. BLACK, Judge Pro Tem**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**KATHERINE A. WRAY, Judge**